

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 11, 2024.**

_____
**CRAIG A. GARGOTTA
CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-51742-CAG |
| | § | |
| CINCH WIRELINE SERVICES, LLC | § | |
| | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

**ORDER DENYING CINCH ENERGY SERVICES' MOTION TO DISQUALIFY BUTCH BOYD LAW FIRM, P.C. AND JORDAN & ORTIZ, P.C. AS SPECIAL COUNSEL (ECF No. 141)**

Before the Court is Cinch Energy Services's ("CES") Motion to Disqualify Butch Boyd Law Firm, P.C. and Jordan & Ortiz, P.C. as Special Counsel for the Trustee (ECF No. 141) and Special Counsel to Trustee's Response ("Response") (ECF No. 168).[1]

---

[1] "ECF" refers to the electronic case file docket number.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate). Venue is proper in the Western District of Texas under 28 U.S.C. §§ 1408 and 1409. The following is the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052(a).[2] For the reasons stated herein, the Motion is **DENIED.**

## FINDINGS OF FACT

### I. Background

Cinch Wireline Services, LLC ("Debtor") provided oil and gas services and collects seismic data to discover oil and gas fields. The business filed its chapter 7 petition on December 13, 2023, without its schedules and statement of financial affairs ("SOFA") in the Western District of Texas. Two weeks later, Debtor filed its schedules and SOFA indicating no income, no operations, and nominal assets. John Patrick Lowe was subsequently appointed as the chapter 7 trustee ("Trustee") in the case. An individual named Tim Pollard originally signed the petition for the Cinch Wireline Services' bankruptcy, and he is now under indictment for tax fraud in an unrelated matter. Shortly thereafter, another individual named Frank Thomas Shumate, Jr. signed Debtor's amended schedules and SOFA indicating no income and limited assets. Shumate is alleged, *inter alia*, to have dissipated assets of Debtor by fraudulent transfer to other entities that Shumate controls, including two entities that are in bankruptcy in this Court: WFO, LLC and Superior Ready Mix, LLC.

---

[2] The Federal Rules of Bankruptcy Procedure shall be referred to as the "Bankruptcy Rule(s)" unless otherwise noted.

Trustee alleges that CES, another entity, is in possession of Debtor assets and has been operating with Debtor assets. Debtor's trucks are expensive, nearly $250,000 per vehicle, and Trustee asserts that Debtor had a prepetition income in the range of millions of dollars. Notably, Debtor's assets also included a customer base, accounts receivable, other equipment, and goodwill. Nonetheless, Debtor claims to be devoid of any assets and operations.

The meeting of creditors also exhibited a unique pattern. After nearly six months of creditor meetings and resets, Trustee ultimately concluded the meeting of creditors on July 2, 2024. Pollard appeared at the first meeting but later invoked his Fifth Amendment against self-incrimination. In contrast, Shumate appeared numerous times, but only to claim that he had limited working knowledge about Debtor.

Despite the unusual nature of this proceeding, Trustee proceeded forward in a routine-styled retention of the Butch Boyd Law Firm ("BBLF") and Jordan & Ortiz ("JO") (together, as "Special Counsel") as general bankruptcy counsel to pursue routine chapter 5 causes of action and objections to claim. The original application to employ was filed on February 21, 2024, with 21-day negative notice language. (ECF No. 37). Ten days later, Special Counsel filed their supplemental application to pursue insider claims and conduct litigation as special counsel to the Trustee. (ECF No. 41). Special Counsel's supplemental application received no objections, and the Court signed an approving their retention on March 26, 2024. (ECF No. 57). After the Court approved both Special Counsel's retention, Trustee learned of significant fraudulent activities concerning Debtor's estate.

## II. Initiation of the Adversary Proceeding[3] and the Motion to Disqualify

In late March 2024, Trustee received credible evidence through a whistleblower that CES, or a holding company for CES (CES Holdings, LLC), was using Debtor assets. The whistleblower alleged that Debtor had a yard located in Corpus Christi, in which Shumate through one or several of his entities, was conducting operations in Debtor's name. When Trustee attempted to investigate these allegations, the whistleblower alleged that Debtor's accountant, Loretta Higgins, had instructed employees of Debtor/CES to destroy Debtor's books and records. The whistleblower also explained that operations had since ceased at Corpus Christi yard and were instead transferred to Midland, Texas under the pseudonym of CES Group Holdings, LLC. As such, Trustee filed an adversary proceeding against multiple Shumate-controlled entities and Pollard and Shumate individually. The adversary proceedings sought injunctive relief, declaratory relief, and recovery of assets under chapter 5 of the Bankruptcy Code. The Court granted a temporary restraining order, which (1) restricted any further destruction of Debtor's books and records, (2) required turnover of all Debtor's books and records, and (3) granted access to Debtor's yard in Corpus Christi and Midland.[4]

Upon a full review of the evidence, the Court is concerned by the seriousness and magnitude of the alleged malfeasance and resultantly compelled Shumate and Higgins to testify. The parties subsequently entered into an agreed preliminary injunction. At the hearing on April 10, 2024, the Court received credible testimony that Shumate's counsel at that time, Paul W. O'Finan, obstructed Trustee access to Debtor's books and records. The Court then subsequently received evidence that Pollard had violated the preliminary injunction, leading the Court to order Pollard's

---

[3] ***Cinch Wireline v. CES et al***, Adv. No. 24-05011.
[4] ***Lowe v. Cinch Energy Services, LLC et al***, Adv. No. 24-05011-CAG (ECF No. 8).

4

attendance on September 17, 2024. Around this time, Debtor hired new counsel Jameson Watts who filed the Motion to Disqualify Special Counsel. (ECF No. 141). The Court held a hearing on August 20, 2024.

At the hearing on the Motion to Disqualify on August 20, 2024, this Court heard testimony from four witnesses, including: (1) Mary Kay McGuffin; (2); Michael Mendietta; (3) Butch Boyd; and (4) Shelby Jordan. Trustee's testimony was introduced by declaration and proffer. There was also limited documentary evidence provided, and most of the exhibits attached for consideration were pleadings already docketed with the Court.

### III. Witness Credibility

After reviewing and listening to the testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below. As a preliminary matter, the Court found that all the witnesses were credible for purposes of this hearing. The Court recognizes that McGuffin and Mendietta were, at one point, arguably insiders of Debtor and weighs this information accordingly.

#### a. Mary Kay McGuffin

McGuffin alleged that she has a membership interest in Debtor and explained that CES is suing her regarding her alleged interest in Debtor. She noted that CES has objected to her $16.5 million proof of claim. McGuffin has consistently maintained that she had an oral agreement with Shumate regarding her membership interest that entitled her to some of the Debtor's profits. The crux of the disqualification motion is McGuffin's representation.

Prepetition, BBLF filed suit on behalf of McGuffin in District Court of Nueces County, Texas, 117th Judicial District in a case captioned: *Mary Kay McGuffin v. Cinch Energy Services, LLC, et*

*al.*, Cause No. 2020DCV-3095-B (the "State Court Litigation"). In the State Court Litigation, McGuffin asserts claims against Cinch Energy, Shumate, the Debtor arising from McGuffin's alleged equity interest in the Debtor and failure to provide McGuffin with her share of dividends, distributions, and profits arising from the Debtor's operations. McGuffin is currently represented by BBLF in the State Court Litigation on a contingency basis, but the State Court Litigation is stayed by Debtor's chapter 7 petition. In addition, J&O filed a notice of appearance on McGuffin's behalf in Debtor's bankruptcy case one month before seeking retention as special counsel to the Trustee. J&O remains McGuffin's counsel of record in the bankruptcy case.

McGuffin testified that she was aware that BBLF had been retained as Special Counsel to Trustee and that she had consented to the representation. McGuffin further stated that J&O recommended that she file a notice of appearance in Debtor's bankruptcy case to monitor the case's progression. While she heeded their advice, McGuffin testified that she did not sign an engagement letter with J&O and stated she also consented to J&O representing Trustee as Special Counsel. McGuffin further explained that she has had limited contact with BBLF and J&O regarding her State Court Litigation and the filing of her notice of appearance.

    b.  **Michael Mendietta**

Mendietta, a member and officer of Debtor from 2017–2022 who claims a 25% membership interest, testified that he was terminated because of a disagreement with Shumate and potential embezzlement. Mendietta explained that he has been sued by CES in state court to attempt to recover assets he allegedly stole. (CES's Ex. 9). The state court held Mendietta in contempt for failing to turnover assets to the state court appointed receiver. (CES's Ex. 10). Mendietta also testified that Trustee had not made a demand for him to turn over any estate property nor has Trustee elected to join him as a defendant in the related adversary proceeding numbered 24-05011.

6

Mendietta maintained that he has been cooperating with Trustee to provide evidence against Shumate and his co-defendants.

### c. Butch Boyd

Boyd is currently serving as one half of Special Counsel to Trustee and has made appearances in related litigation concerning Shumate's filings for WFO, LLC and Superior Ready Mix, LLC. Boyd filed the adversary proceeding numbered as 24-05011, the application for TRO, the preliminary injunction, as well as the Motion for Sanctions against Pollard and Shumate. Boyd testified that he believed his Declaration in support of his original and supplemental applications are accurate. He maintained that he did not need to disclose his representation of McGuffin in the State Court Litigation because that litigation is stayed. Boyd acknowledged that he filed suit against Debtor, CES, and Jason Sprencel two days before Debtor filed chapter 7 bankruptcy. Boyd also testified that because McGuffin only had an equity interest in Debtor, it was unnecessary to disclose her interest. Moreover, Boyd contended that his statement in his Declaration that he represented McGuffin was sufficient and that he did not need to further explain McGuffin's pending State Court Litigation. Finally, Boyd agreed that § 327 does involve different bases for retention applications, i.e. §§ 327(c) and (e), but stated that a general reference to § 327(a) encompassed special counsel litigation status and was sufficient.[5]

### d. Shelby Jordan

Jordan, the other half of Special Counsel, acknowledged that he filed a notice of appearance on behalf of McGuffin and did not withdraw his appearance prior to the Motion to Disqualify being filed. Jordan testified that he did not know or investigate whether McGuffin was involved in any litigation regarding Debtor. As such, Jordan testified he did not know he needed to make

---

[5] Unless otherwise indicated, all statutory references are to Title 11, 11 U.S.C __ et seq.

any disclosures regarding McGuffin's lawsuit. Jordan further testified that he did not think McGuffin's lawsuit needed to be disclosed. Although Jordan responded to the Court's questions regarding whether his Declaration and supplemental application should have been filed under §§ 327 (c) and (e), he stated that he did not think that precluded BBLF and J&O from serving as Special Counsel. Jordan testified that, in his opinion, CES knew in April 2024 that BBLF and JO were serving as Special Counsel to Trustee.

    e. **Trustee**

The Court accepted Trustee's Declaration and proffer as his testimony in this hearing. (Special Counsel's Ex. 9). Trustee stated that Boyd had informed him of the State Court Litigation and BBLF's representation of McGuffin. Boyd also disclosed to Trustee that McGuffin was a creditor in the Debtor's case. Trustee stated that objections to the supplemental application were due on March 22, 2024, but that none were ever filed and this Motion to Disqualify was not filed until July 17, 2024. Lowe noted in his Declaration that in a hearing held on April 25, 2024, Paul O'Finan, who served as prior CES counsel in this case, argued that Special Counsel should be conflicted out of serving as Trustee's representation because of their representation of McGuffin. Nonetheless, Lowe stated that he approved BBLF's and JO's retention, and that retention was proper under § 327(c).

Although not contained in Lowe's Declaration, the Court previously advised O'Finan to file an objection to BBLF's and JO's continued representation as Special Counsel at the hearing held

on April 25. O'Finan did not take any further action regarding his assertions that Special Counsel had a conflict in representing Trustee.

## LEGAL STANDARD

*A. Parties' Contentions*

In its Motion to Disqualify, CES contends that Special Counsel's application and supplement omit details sufficient for the Court to determine their level of disinterestedness and qualifications under 11 U.S.C. § 327(a). CES argues this requires their disqualification in representing Trustee. (ECF No. 141 at 8). CES argues that Special Counsel's Disclosures were inadequate under Rule 2014 and § 327 considering the disclosures omit the State Court Litigation and McGuffin's alleged membership interest in CES. Watts further argues that, as new counsel to CES, he acted as expeditiously as possible to file this Motion to Disqualify.

To reiterate, the alleged conflict here stems from the dual representation by BBLF in which the firm serves: (1) as Special Counsel to Trustee in prosecuting claims for damages against "insiders" and "affiliates" in the bankruptcy case, (2) while also representing Mary Kay McGuffin, a creditor with a $16,500,000 proof of claim filed in the bankruptcy case, in state court litigation related to her equity interest in CES and failure to receive profits from CES's operations. (ECF No. 141 at 2); (ECF No. 141, Ex. A).[6] CES has since objected to McGuffin's proof of claim, countering that it is an alleged equity interest instead. (ECF No. 139). J&O has also been retained by the Trustee as Special Counsel and is also serving as McGuffin's counsel in the bankruptcy case. (ECF No. 141 at 2). In CES's view, "BBLF's and J&O's failure to disclose McGuffin's

---

[6] CES argues that BBLF and J&O must be disqualified because of their "(i) failure to accurately and adequately disclose McGuffin's true interest in this [b]ankruptcy [c]ase, (ii) failure to disclose pending litigation against the Debtor, Cinch Energy, and Shumate relating to a dispute over ownership interests in the Debtor, (iii) actual conflict of interest in representing both the Trustee and McGuffin, (iv) lack of disinterestedness, and (v) predisposition under the circumstances that renders BBLF and JO biased against the Debtor's estate." (ECF No. 141 at 8).

9

alleged equity ownership in the Debtor is sufficient on its own to justify disqualification." (ECF No. 141 at 9). CES argues that the following omissions require this Court to disqualify Special Counsel:

> a. that McGuffin alleges she is purportedly entitled to a 30% membership interest in the Debtor and unpaid distributions and profits of the Debtor dating back to 2014;
> b. that BBLF represented McGuffin, as plaintiff, in an equity ownership dispute against the Debtor, Cinch Energy, and Shumate, as defendants, which had been pending for more than three years prior to the Petition Date in this Bankruptcy Case and remains pending through today;
> c. whether McGuffin's alleged membership interest in the Debtor prohibits BBLF and J&O from providing the Trustee with truly independent, unbiased legal advice;
> d. whether the term "Insiders," as used in the Supplement, is to be given the meaning ascribed under 11 U.S.C. § 101(31);
> e. whether BBLF and J&O can truly provide independent advice to the Trustee when BBLF and J&O represent McGuffin, who as a purported equity owner in the Debtor and should be a target of an investigation into "insiders" of the Debtor; and
> f. whether BBLF's fee arrangement with McGuffin in the State Court Litigation and as special counsel in this Bankruptcy Case entitles BBLF to attorneys' fees in excess of the amounts disclosed to this Court in the Application and Supplement.

(ECF No. 141 at 8–9).

Special Counsel counters that CES has waived its right to seek their disqualification. (ECF No. 168 at 11). In Special Counsel's view, Trustee filed its application to retain Special Counsel and in doing so, provided notice to CES and its then-counsel Paul O'Finan. (ECF No. 168 at 11). Special Counsel notes that O'Finan previously objected in multiple hearings before this Court and was directed to file a formal objection, but elected to not file an objection. (ECF No. 168 at 10–11). Special Counsel argues that this Motion to Disqualify also comes nearly five months after initial notice, the Court's approval of Special Counsel's Application to Employ without objection, and a preliminary injunction agreement without objection. (ECF No. 168 at 13). Trustee's Special Counsel questions the motive for this delay in objecting at the hearing, alluding that it only furthers the ability of Shumate's alleged fraudulent conduct to continue without intensive investigation. As such, Special Counsel argues that it would be inequitable to disqualify Special Counsel at this time

10

in the proceedings and raised the concern that disqualification would seriously impair the progress of the case. Finally, Special Counsel argues that even if Debtor's argument was not waived, J&O and BBLF's disclosures comport with Rule 2014 and § 327 nonetheless.

At the continued hearing held on August 14, 2024 in ***Lowe v. CES***, Adv. No. 24-05011 addressing Trustee's Amended Motion for Sanctions, the Court received testimony explaining Debtor's hierarchy. Higgins explained Shumate operates "at the top," Pollard serves directly below Shumate as Debtor's vice president, then Sprencel and Mendietta and Lopez are below Pollard, and then a "linear" group of individuals including Cynthia Mathis, Israel Rodriguez, Omar Villarreal and Higgins operate at the base level. (Hearing Transcript at 91, lns. 1–19) (***Lowe v. CES***, Adv. No. 24-05011, ECF No. 257). Higgins illustrated how complex the web of people are at the heart of Debtor's operation, and the concerning allegations that she was directed to not conduct any bookkeeping and was denied access to financial information at the direction of Pollard, who reports directly to Shumate.[7]

Shumate's testimony also demonstrated how Special Counsel will likely face substantial difficulty in assessing the web of information woven by Shumate. Shumate only admitted, after extensive chastising by the Court to directly answer questions, that he indeed transferred money between his various companies. (Hearing Transcript at 153, lns. 9–24). Shumate repeatedly pointed the blame towards Pollard, who reports to Shumate "at times" and is Shumate's employee

---

[7] Higgins testified that Pollard directed her to not access financials for any entity or any other sites. (Hearing Transcript at 85, lns. 5–15). Specifically, Higgins stated that was denied access to certain books and records in April and June, including Dropbox access for Superior Ready Mix Alabama, Superior Ready Mix Texas, WFO, LLC, and Lone Star— which are all Shumate-related entities. (Hearing Transcript at 79, lns. 2–4). Higgins later detailed that she was informed by Pollard that she was not permitted to see any of the sites and was not to conduct any bookkeeping, per direction from Shumate and Pollard. (Hearing Transcript at 87 at lns. 9–21). Higgins appears to have been complicit in burning estate documents at Shumate's direction, however, Higgins has been cooperating with Special Counsel. As such, Special Counsel clarified on the record at the Hearing that Special Counsel is not seeking any civil or bankruptcy relief against her. The Court understands that Higgins's detailed descriptions of systematic barriers highlight the unique and complex nature facing this case and Special Counsel in accessing information.

(Hearing Transcript at 139, lns. 12–16), regarding who attempted to sell one of Debtor's owned facilities (the Corpus Christi yard) without Trustee approval. (Hearing Transcript at 143, lns. 6–11); (Hearing Transcript at 145, lns. 22–25). Shumate also blamed Pollard for why Higgins was denied access to cloud-based storage systems and accounting records. (Hearing Transcript at 128, lns. 11–21). Later, Shumate contested that Pollard, who was listed as vice president of Debtor on Debtor's schedules, was vice president, and instead claimed that the manager of Debtor was instead Sprencel and Mendietta. (Hearing Transcript at 130, lns. 11–13). Meanwhile, this Court has been unable to hear any testimony from Pollard.

In this case, to the Court's understanding, numerous individuals appear to perform a metaphorical "merry-go-round" of finger-pointing. The Court is particularly sensitive to the difficulty Special Counsel faces in performing their role when a lack of information abounds and Shumate is highly uncredible, all against a background of burning documents and Debtor's prior counsel physically blocking Trustee from entering the property.

For the reasons the Court will now discuss, the Court agrees that Debtor's Motion to Disqualify is untimely and disqualification at this point in the case would be inequitable.

B. *Legal Standard for Motions to Disqualify Under Fifth Circuit and Texas State Law*

"Motions to disqualify an attorney are substantive motions determined by standards developed under federal law and are governed by the ethical rules announced by the state and national professions in light of the public interest and rights of the litigants." ***McGurgan v. Wal-Mart Stores Texas, LLC***, No. SA-23-CV-01147, 2024 WL 2031774, at *1 (W.D. Tex. May 7, 2024) (citing ***In re Dresser Indus., Inc.***, 972 F.2d 450, 543 (5th Cir. 1992)). As such, "(1) the local rules in the district; (2) the American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct" are

relevant to this Court's resolution of this issue. **Stonecoat of Texas, LLC v. Procal Stone Design, LLC**, No. 4:17-CV-00303, 2019 WL 9899506, at *7 (E.D. Tex. Mar. 8, 2019). The party seeking disqualification ultimately bears the burden of proving that disqualification is warranted. **Abney v. Wal-Mart**, 984 F. Supp. 526, 528 (E.D. Tex. 1997).

In the Fifth Circuit, attorney disqualification is a harsh penalty "that must not be imposed without careful consideration." **FDIC v. U.S. Fire Ins. Co.**, 50 F.3d 1304, 1313 (5th Cir. 1995). Courts must consider "all of the facts particular to the case . . . in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." **In re MMA L. Firm, PLLC**, 660 B.R. 128, 134 (Bankr. S.D. Tex. 2024). There are two methods to disqualify an attorney: "(1) if 'the subject matter of the present and former representation are substantially related', or (2) 'if [movant's] former attorney possessed relevant confidential information in the manner contemplated by [Texas Disciplinary Rule 1.09(a)(2)].'" **Abney**, 984 F. Supp. at 528 (citing **In re American Airlines**, 972 F.2d 605, 615 (5th Cir. 1992)). Thus, Debtor may satisfy its burden by demonstrating either a substantial relationship between the subject matter of the State Court Litigation and the present litigation at the behest of Trustee, or by showing that Special Counsel possesses confidential information that may be used to Debtor's disadvantage.[8] **Id.**

As a preliminary matter, "[w]hen considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" **In re ProEducation Int'l Inc.**, 587 F.3d 296, 299 (5th Cir. 2009). In the Western District of Texas, Local Rule 1001(f) incorporates Western District of Texas Local Rule AT-7(a), which states that "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of

---

[8] There was no briefing or evidence presented as to this issue. As such, the Court will only address whether a substantial relationship between the former and present litigation is demonstrated.

professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." W.D. Tex. Local Rule AT-7(a).

The relevant Texas Disciplinary rule, Rule 1.09, states:

> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
> (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05 [confidential client information]; or
> (3) if it is the same or a substantially related matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1997); *see also* **American Airlines**, 972 F.2d at 615 & n. 2 (holding that the federal test for disqualification and TEXAS DISCIPLINARY R. PROF'L CONDUCT 1.09 are substantively similar.)

Accordingly, the Court will now consider the Texas Rules and Model Rules, together, below in assessing "(1) whether [Debtor] has shown a substantial relationship between the subject matter of its present and former representations, and (2) whether Defendant waived the conflict by waiting to file its motion" five months after Special Counsel filed its motion for employment. *McGurgan*, 2024 WL 2031774, at *3.

*(a) Substantial Relationship Test*

"A party seeking disqualification of an attorney based on the attorney's former representation of the party in a substantially related matter must show disqualification to be appropriate through a specific delineation of the 'subject matter, issues, and causes of action' common to both representation." ***Islander E. Rental Program v. Ferguson***, 917 F. Supp. 504, 510 (S.D. Tex. 1996) (quoting ***American Airlines***, 972 F.2d at 614). "Once it is established that the prior matters are substantially related to the present case, 'the court will irrebuttably presume that relevant

14

confidential information was disclosed during the former period of representation.'" *Azad v. Nationwide Prop. & Cas. Ins. Co.*, No. 3:19-CV-312-E (BH), 2019 WL 10888765, at *3 (N.D. Tex. Nov. 12, 2019). The Fifth Circuit has a high standard for pleading substantial relationships, requiring that Debtor argue "with requisite specificity." *See* **McGurgan**, 2024 WL 2031774, at *3 (citing **Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.**, 646 F.2d 1020, 1029 (5th Cir. 1981)) ("Merely pointing to a superficial resemblance between the present and prior representations will not substitute for the careful comparison demanded by our cases."). Requisite specificity means that there is sufficient detail for the Court to "engage in a 'painstaking analysis of the facts.'" *Id.* The Court cannot consider "general assertions that lack the specificity to allow this Court to properly evaluate whether there is a substantial relationship between the subject matter of the present and former representations." *Id.* Specificity is plead through "tender[ing] affidavits that provide the necessary detail required by the Fifth Circuit." *Id.*

In its Motion to Disqualify, CES argues that Special Counsel is precluded from representing Trustee because the State Court Litigation, in which McGuffin is suing to establish a membership interest, and Trustee's litigation, in which Trustee is investigating insider causes of action, "aris[e] from the same facts." (ECF No. 141 at 2). Debtor's briefing and oral argument[9] largely focused on the omission in Special Counsel's application that McGuffin was being represented in state court and lack of explanation as to "how [Special Counsel] can independently pursue causes of action for damages against insiders without bias and simultaneously represent McGuffin." (ECF No. 141 at 13).

---

[9] At the hearing, CES tendered the state court petition as an exhibit. McGuffin's causes of action include breach of contract, unjust enrichment, breach of fiduciary duty, money had and received, and demand for accounting related to McGuffin being allegedly "shut out of the company" with no further distributions or accounting. (CES's Ex. 2).

15

While the Court, following the Fifth Circuit's lead, is sympathetic to any perceived conflicts of interest, the Court finds that allegations of a substantial relationship are not plead with sufficient specificity. The mere fact that the causes of action "arise from the same facts" is insufficient for this Court to make the "painstaking analysis" required of it to find that the substantial relationship test is satisfied. It is not ultimately the role of the Court to read between the lines, in light of staunch Fifth Circuit precedent requiring specificity in pleading substantial relationships. The Court now turns to whether Debtor waived its right to disqualify Special Counsel's representation of Trustee.

*(b) Timeliness of Debtor's Motion to Disqualify*

Finally, "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." **Cinco Bayous, LLC v. Samson Expl., LLC**, No. 1:19-CV-452, 2020 WL 13533320, at *7 (E.D. Tex. Aug. 17, 2020) (citing **Pendergest-Holt v. Certain Underwriters at Lloyd's of London**, No. CV H-09-3712, 2010 WL 11661414, at *5–6 (S.D. Tex. July 30, 2010)). The relevant inquiry is partially based upon how many months lapsed from when the moving party became aware of the conflict to when the motion to disqualify was filed—which is determined from Texas and federal caselaw. **Abney**, 984 F. Supp. at 529. The Fifth Circuit has instructed its lower courts to not "mechanically" apply the rule of disqualification. **F.D.I.C. v. U.S. Fire Ins. Co.**, 50 F.3d 1304, 1314 (5th Cir. 1995).

The Court will first address the timeline deemed acceptable by federal and state courts in Texas. In general, Texas federal and state courts alike have found that "a party who fails to file a motion to disqualify opposing counsel in a timely manner waives the complaint." *Id.* (citing **Vaughn v. Walther**, 875 S.W.2d 690, 690 (Tex. 1994, orig. proceeding) (finding waiver when the movant waited six and a half months after becoming aware of the conflict)); *see also* **Spears v.**

16

*Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) ("[C]ourts must adhere to an exacting standard when considering motions to disqualify counsel so as to discourage their use as a dilatory trial tactic."). Texas courts will also find waiver if it is being "used in an abusive manner as part of litigation tactics." *Microsoft Corp. v. Cmmw. Sci. and Indus. Rsch. Org.*, No. 6:06 CV 549, 2007 WL 4376104, at *9 (E.D. Tex. Dec. 13, 2007).

The Fifth Circuit has not expressly stated what the exact data points are for permissive timing verses when waiver should be found. As such, Texas state and federal courts have looked outside of Texas and the Fifth Circuit for guidance, and have previously found that "[w]aiver of a motion for disqualification of counsel is proper where the delay in moving for a disqualification is for an extended period of time, or where it is done on the eve of trial." *Abney v. Wal-Mart*, 984 F. Supp. 526 (E.D. Tex. 1997). Here, this disqualification motion was filed five months after CES received notice of Special Counsel's retention. Looking to the timeline used by other Texas federal and state courts,[10] five months appears to fall within a gray area of being in between a permissible four-month request to disqualify and the impermissible six-month request from receiving notice.

Upon review of the unique factual circumstances of this case and caselaw, the Court finds that waiver is satisfied. For one, CES's counsel did not file an objection to Special Counsel's employment application within 21 days. Next, CES's counsel objected in open court and this Court instructed counsel that he could have filed within the twenty-one-day period permitted under the bankruptcy court for the Western District of Texas's local rules. Further, counsel could have filed

---

[10] Multiple Texas federal courts have all cited to the following string of cases: *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87–88 (9th Cir. 1983) (waiver found when raised two and a half years after notice of representation); *Central Milk Producers Co–op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) (waiver found when the disqualification motion was brought more than two years after notice of representation); *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F.Supp. 1150, 1165–1166 (N.D. Cal. 1988) (waiver found after the moving party became aware of conflict over a year later); *cf. Islander East Rental Program v. Ferguson*, 917 F.Supp. 504, 507–508 (S.D. Tex. 1996) (no waiver where conflict raised just four months after action was initiated)).

a motion based on the alleged conflict. The case has since become a more and more complex web as further fraud allegations have proliferated and witnesses have become alternatively less available or more verbose.

### (c) Balance of Equitable Factors Also Support Retaining Counsel

Even if waiver did not occur, on balance, the "costs and benefits of disqualifying [Special Counsel] disfavor disqualification." ***One World Foods, Inc. v. Stubb's Austin Rest. Co. LC***, No. A-15-CA-1071-SS, 2016 WL 6242121, at *8 (W.D. Tex. Oct. 25, 2016). The Court appreciates CES's concern of a potential conflict of interest, but timeline is not everything. Courts also consider whether disqualification "would impose significant costs in time and money" and whether disqualification "would likely cause significant delays in the case." ***Id.*** The Fifth Circuit clarified in ***In re Dresser Industries, Inc.***[11] that in the context of concurrent representation, this Court must consider whether the conflict has "(1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." ***In re Dresser Indus., Inc.***, 972 F.2d 540, 544 (5th Cir. 1992). Here, no evidence was presented of impropriety or that there is a strong possibility that impropriety will occur. This leaves the Court to consider and give more weight to the public interest consideration. The public interest presents a strong argument in favor of maintaining Special Counsel.

Currently, Special Counsel is performing work on a 40% contingency fee. The Court is concerned that Trustee will struggle to locate and secure new counsel willing to do the kind of complex work this case requires at such a rate. This case is also a uniquely complex web: numerous

---

[11] Citing ***Woods v. Covington Cnty. Bank***, 537 F.2d 804 (5th Cir. 1976) (explaining that ethical rules are governed by the national profession in the context of the public interest and enumerating the same considerations explained above in text in the context of an attorney's prior representation).

Shumate entities, concerning allegations of burning evidence and property of the estate, various delays, and only a handful of cooperating witnesses. Disqualifying Special Counsel at this stage would be inequitable towards creditors and disadvantage the estate from being properly and thoroughly investigated. This Court is not alone in placing extra emphasis on cost and time for Trustee to find counsel. A bankruptcy court in the Northern District of Texas previously stated that "disqualification of Trustee's special counsel at this date would be inequitable because it would be too costly and time-consuming for the Trustee to find new counsel and familiar such counsel within the complex facts of the Adversary Proceeding." ***In re Hunt Intern. Res. Corp.***, No. 385-30831 RCM-11, 1992 WL 235580, at *16 (Bankr. N.D. Tex. Mar. 11, 1992). This Court agrees. As such, CES's Motion to Disqualify Counsel is **DENIED.** Because this Court finds that CES waived its right to disqualification, this Court need not address the applicability of § 327 and deems it **MOOT**.

Therefore, it is **ORDERED** that Debtor's Motion to Disqualify is **DENIED**.

# # #