

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 18, 2025.**

_Craig A. Gargotta_

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 23-51742-CAG |
| | § | |
| CINCH WIRELINE SERVICES, LLC, | § | |
| | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

### ORDER GRANTING SIMMONS BANK'S MOTION TO DISMISS BANKRUPTCY CASE FOR LACK OF SUBJECT MATTER JURISDICTION (ECF No. 299)

Came on to be considered Simmons Bank ("Simmons") Motion to Dismiss Bankruptcy Case for Lack of Subject Matter Jurisdiction (ECF No. 299) (the "Motion")[1] and Brief in Support of Simmons Bank's Motion to Dismiss (ECF No. 315), and Responses in support and opposition thereto.[2] For the reasons stated in this Order, the Motion is **GRANTED**.

---

[1] ECF No. 1. "ECF" denotes electronic case file number in Bankruptcy Case No. 23-51742-cag. Unless otherwise denoted, all ECF references are to Bankruptcy Case No. 23-51742-cag.

[2] Parties that filed pleadings in support of dismissal of this chapter 7 case are movant Simmons Bank, Los Cabos Ranch, LLC and Mark Lopez —Response and Brief in support of the Motion (ECF Nos. 301 and 308); 17 Main, LLC— Joinder to the Motion (ECF No. 313), Cinch Energy Services, LLC—Brief on Subject Matter Jurisdiction (ECF No. 314), and Tim Pollard Construction and Timothy Pollard—Brief/Memorandum of Law (ECF No. 309). Parties opposing dismissal of the chapter 7 case are Debtor (who did not file a brief); Chapter 7 Trustee John Patrick

JURISDICTION

The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1334. The Court finds that this is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate). Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is defined as a contested matter under FED. R. BANKR. P. 9014(a). As such, the Court may issue findings of facts and conclusions of law pursuant to FED. R. BANKR. P. 7052(a). This case is referred to this Court under the District Court's Order on Reference. A court has jurisdiction to determine whether it has subject matter jurisdiction. *See **United States v. Ruiz**,* 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction.") (citation omitted).

BACKGROUND

Cinch Wireline Services, LLC ("Debtor" or "CWS") filed its chapter 7 petition on December 13, 2023, without its schedules and statement of financial affairs ("SOFA"). John Patrick Lowe was appointed chapter 7 trustee ("Trustee") in the case. Tim Pollard ("Pollard") signed the petition as Executive Vice President.[3] Debtor filed its original Schedules and Statement of Financial Affairs on December 27, 2023.[4] Pollard signed the original Schedules and SOFA which indicated no assets and liabilities of $2,700,414.86.[5] Debtor indicated no income or transfers of property.[6] Question 28 of the SOFA indicated that Cinch Energy Services, LLC ("CES") is the parent company of Debtor and owns 100% of Debtor.[7] Frank Thomas Shumate, Jr. ("Shumate) and

---

Lowe— Supplemental Response and Brief (ECF No. 310); Justin Sprencel—Response (ECF No. 311); and Mary Kay McGuffin and Michael Mendietta—Response and Brief (ECF No. 312).

[3] ECF No. 1 at. 6.
[4] ECF No. 8.
[5] *Id*. at 2.
[6] *Id*. at. 12.
[7] *Id*. at17.

Mark W. Lopez ("Lopez") are listed as owners of CES without a description of their percentage ownership in CES.[8] Pollard signed Amended Schedules and SOFA on January 19, 2024.[9] There were no material changes to the January 19, 2024, filings. Thereafter, Shumate, as "President", signed the last amended schedules and SOFA in which the only material change was to add secured debt of $521,000.00 because Pollard was under indictment for tax fraud in an unrelated matter.[10]

The first meeting of creditors was set for January 16, 2024.[11] The meeting of creditors was continued six times and concluded on July 2, 2024. Pollard appeared at the original meeting of creditors on January 16, 2024.[12] Pollard stated that he was authorized to file the bankruptcy case.[13] Pollard testified that there was a meeting of owners consisting of himself, Shumate, and Lopez in which all three owners authorized the filing of Debtor's chapter 7 petition.[14] Notably, Lowe asked Debtor's counsel, Jim Wilkins, to file the corporate resolution in the case authorizing the filing of Debtor's petition.[15] Pollard testified that Debtor had no assets and leased assets from other entities, including CES, to conduct its business.[16] Further, Pollard stated that the primary reason Debtor filed for chapter 7 relief was to discharge its liabilities from lawsuits in which it was a defendant.[17]

---

[8] *Id.*

[9] ECF No. 27.

[10] ECF No. 81.

[11] 11 U.S.C. § 341(a) provides in relevant part that the "United States trustee shall convene and preside at a meeting of creditors." Unless otherwise noted, all statutory references are to Title 11, 11 U.S.C. § _ *et seq*. The court is precluded from attending or presiding over the meeting. § 341(c).

[12] Mendietta and McGuffin Exhibit 28 at 4 [hereinafter Mendietta Ex.] (Transcript of January 16, 2024, § 341 Meeting).

[13] *Id.* Pollard also stated at the March 14, 2024, meeting that Shumate and Lopez told him to sign the chapter 7 petition and that Pollard was authorized to do so. Mendietta Ex. 29 at 17–18 (Transcript of March 14, 2024, § 341 Meeting).

[14] Mendietta Ex. 28 at 4–5.

[15] *Id.* The Company Resolution that Pollard, Shumate, and Lopez signed was never successfully filed of record in the case (it was dismissed twice for lack of noncompliance—ECF Nos. 297 and 298—but was included as an exhibit in multiple hearings before the Court). FED. R. BANKR. P. 1007(a)(1) requires that a debtor file corporate ownership statement with the petition. This Resolution is dated December 13, 2023, and is signed by Pollard (the "December 13, 2023, Resolution").

[16] *Id.* at 7–8.

[17] *Id.* at 9.

Thereafter, Shumate appeared at the meeting of creditors but stated he had limited knowledge about the Debtor. Trustee concluded the meeting of creditors on July 2, 2024.

Trustee alleges, *inter alia*, that Shumate dissipated assets of Debtor by fraudulent transfers to other entities that Shumate controls, including two entities that are in bankruptcy in this Court WFO, LLC[18] and Superior Ready Mix of Texas, LLC.[19]

Trustee alleges that CES is in possession of Debtor assets and has been, or is still, operating with the use of Debtor assets. Briefly, Debtor's business was providing oil and gas services that included the acquisition of seismic data to discover oil and gas fields. Debtor's trucks are expensive, roughly $250,000 per vehicle, and Trustee asserts that Debtor had income in the years prior to the filing of the chapter 7 petition in the millions of dollars. Debtor's assets also included a customer base, accounts receivable, other equipment, and good will. Nonetheless, as stated herein, Debtor is devoid of any assets and operations.

### *John Patrick Lowe as Chapter 7 Trustee for Cinch Wireline, LLC v. CES et al*, Adv. No. 24-05011- cag

In late March 2024, Trustee received credible evidence through a whistleblower that CES, or a holding company for CES—CES Holdings ("CESGH"), was using Debtor assets. Further, it was alleged that Debtor had a yard located in Corpus Christi, in which Shumate through one or

---

[18] WFO, LLC, Bankruptcy No. 24-50824-cag, filed chapter 11 bankruptcy on May 6, 2024. (ECF No. 1). Shumate signed the chapter 11 petition as President of WFO. Jim Wilkins, counsel to Debtor in this case, also filed the WFO petition. The United States trustee asked that the case be converted to chapter 7 because Shumate engaged in unauthorized transfers of WFO's property to other Shumate controlled entities. After an evidentiary hearing, the Court found that a chapter 11 trustee should be appointed to manage the chapter 11 case. (ECF No. 198).

[19] Superior Ready Mix of Texas, LLC, Bankruptcy No. 24-50825-cag, filed a chapter 11 petition on May 6, 2024. (ECF No. 1). Shumate signed the petition as President of Superior Ready Mix of Texas, LLC. (ECF No. 1). Jim Wilkins as debtor's counsel also filed that petition. The United States trustee asked that the case be converted to chapter 7 because Shumate (1) engaged in pre-petition gross mismanagement and that the gross mismanagement continued post-petition, (2) the debtor currently has no bank accounts and has failed to open a debtor-in-possession account, (3) the debtor is using professionals not retained by the estate to represent the debtor in bankruptcy proceedings and sign the sworn schedules and Statement of Financial Affairs ("SOFA"), and (4) the debtor has admitted this is a liquidation case, and an independent chapter 7 trustee should be appointed to properly liquidate assets and pay creditors. (ECF No. 144). After an evidentiary hearing, the Court converted the case to chapter 7. (ECF No. 210).

several of his entities, was conducting operations in the name of Cinch Wireline. When Trustee attempted to investigate these allegations, the whistleblower alleged that the CPA for Debtor and other Shumate controlled entities, Loretta Higgins, instructed employees of CWS/CES to destroy the books and records of Debtor. The whistleblower also alleged that operations ceased at Corpus Christi yard and were transferred to Midland, Texas under the pseudonym of CES Holdings.

As such, Trustee filed an adversary proceeding (24-05011-cag) against multiple Shumate controlled entities, Pollard, and Shumate, seeking injunctive relief, declaratory relief, and recovery of assets under chapter 5 of the Bankruptcy Code. The Court granted a TRO that restricted any further destruction of Debtor books and records, a turnover of all Debtor books and records, and granted access to Debtor's yard in Corpus Christi and Midland.[20] The evidence provided to the Court regarding Higgins' activities and Shumate's complicity and involvement in the alleged malfeasance was disturbing to the Court. The parties ultimately entered an agreed preliminary injunction (involving Shumate's counsel), after the Court compelled Shumate and Higgins to attend and testify regarding their conduct. Also, the Court observed that Shumate's prior counsel obstructed Trustee's counsel's access to Debtor books and records. In addition to the preliminary injunction, the Court granted an interim sanctions order against Shumate regarding his violations of the preliminary injunction.[21] The Court reset the hearing on the Trustee's sanctions motion.

Pursuant to the Court's Interim Sanctions Order, Trustee's Counsel observed CESGH's operations at the Midland facility on June 21, 2024.[22] Notably, Trustee's inspection was met with cooperation by all parties. On July 29, 2024, Trustee sent a demand to Shumate, requesting Trustee

---

[20] Adv. No. 24-05011, ECF No. 8.
[21] Adv. No. 24-05011, ECF Nos. 96 and 113.
[22] Adv. No. 24-05011, ECF No. 211 at 19.

be added as the signatory on all bank accounts for all wireline operations as specified in the Interim Sanctions Order.[23] Shumate refused to comply with Trustee's demand.

Consequently, Trustee filed an Amended Motion for Sanctions on August 8, 2024, adding a request for sanctions for violations of the automatic stay.[24] The Amended Motion focused primarily on Shumate's conduct, alleging Shumate directed the actions of the other Defendants.[25] Five days later, Shumate filed his Response to Trustee's Amended Motion, claiming he complied with the Court's orders and that a portion of Trustee's request for sanctions is premature because it relates to the underlying causes of action in the adversary proceeding.[26]

The Court held the final sanctions hearing on September 17, 2024. Most of the testimony revolved around CESGH's operation of a wireline business in Midland and the way Higgins maintained financial records for Shumate and his entities.[27] Pollard testified about a contract for the sale of Debtor's land which listed a closing date of June 10, 2024—a date after the entry of the Court's TRO and Preliminary Injunction.[28] Pollard admitted that neither Pollard nor any other Defendant requested permission from the Trustee to sell Debtor's property.[29] Nevertheless, Pollard explained the contract fell through and Debtor's property was never converted.[30] Despite this, Trustee claims Shumate directed Pollard to sign the contract in violation of the Court's TRO and Preliminary Injunction.[31] At the end of the hearing, the Court took the matter under advisement.

---

[23] Adv. No. 24-05011, ECF No. 225, Ex. A).
[24] Adv. No. 24-05011, ECF No. 211 at 20.
[25] Adv. No. 24-05011, ECF No. 211 at 21.
[26] Adv. No. 24-05011, ECF No. 225.
[27] Adv. No. 24-05011, ECF No. 283 at 42–118 (Transcript of September 17, 2024, hearing).
[28] *Id.* at 38–42.
[29] *Id.* at 40.
[30] *Id.*
[31] Adv. No. 24-05011, ECF No. 211 at 21.

The Court found that only a portion of the evidence submitted to the Court quantified as harm directly linked to Shumate's conduct that violated the Court's protective orders.[32] While the Court was tempted to impose substantial monetary sanctions considering the allegedly egregious conduct of Shumate, the Court determined to impose only remedial or coercive sanctions. As such, the Court found that $22,127.50 was the least severe sanction to compensate Trustee for the additional work Trustee had to perform to complete his investigation and enforce the Court's protective orders.[33]

### *Cinch Energy Services, LLC v. Mendietta, Sprencel, McGuffin, and Lowe as Trustee for Cinch Wireline Services*, Adv. No. 24-05012-cag

A corollary to this Court's determination whether Debtor's chapter 7 petition was filed with the requisite authority, was this Court's determination regarding the identity of the members of Debtor. CES filed a declaratory judgment action seeking the Court determine that McGuffin and CES are the only members of Debtor.[34] Further, the Complaint requested the Court find that Sprencel and Mendietta are not members of Debtor and that CES is the majority member of Debtor with the only standing to file Debtor's chapter 7 petition.[35] Answers were filed before and after the Court's Scheduling Order. The Court's form Scheduling Order provided in part that Rule 26 disclosures be filed on or before May 29, 2024; that discovery be completed by August 13, 2024; and that dispositive motions should be filed on or before August 23, 2024.[36]

Sprencel filed his Motion for Summary Judgment and requested the Court determine that Sprencel be found to be a member of Debtor because CES failed to answer Sprencel's request for

---

[32] Adv. No. 05-05011, ECF No. 377.
[33] *Id.*
[34] Adv. No. 24-05012, ECF No. 1 ¶ 23.
[35] *Id.*
[36] Adv. No. 24-05012, ECF No. 12 ¶¶ 2–4.

admissions.[37] As a result of CES not answering Sprencel's request for admissions, Sprencel argued that:

> The matters deemed admitted by Cinch Energy and conclusively established for purposes of this motion for summary judgment include the following: (a) on February 28, 2017, Sprencel had a 30% interest in Wireline; (b) on November 27, 2023, Sprencel was a 45% member of Wireline; and (c) since February 28, 2017, Sprencel has always been a member of Wireline. Likewise, Mendietta and McGuffin deemed admissions also conclusively establish their membership interest in Wireline. All three sets of admissions therefore conclusively establish Cinch Energy is no longer a member of Wireline. The only members are Sprencel, Mendietta, and McGuffin.[38]

In addition to not answering discovery, participating in discovery, or serving Rule 26 disclosures, CES failed to respond timely to Sprencel's motion for summary judgment. Local Rule 7007(b)(2) states that failure to file a timely response allows the Court to grant the motion without further notice and hearing. Michael Mendietta filed a similar motion for summary judgment seeking the same relief.[39] CES filed a motion to withdraw deemed admissions and motion to extend time to respond to the motions for summary judgment.[40] The Court set CES's motions and the two summary judgment motions for hearing. The Court found CES's explanations for not answering discovery and responding to the summary judgment motions unavailing and denied both motions.[41] The Court also considered the motions for summary judgment and supporting summary judgment evidence, granting both motions.[42] The Court found that Mendietta is a 20 percent member of Debtor and CES is not a member of Debtor.[43] The Court found that Sprencel is a 45 percent owner of Debtor and that CES is not a member of Debtor.[44]

---

[37] Adv. No. 24-05012, ECF No. 53 ¶¶ 20–23.
[38] *Id*. ¶ 23.
[39] Adv. No. 24-05012, ECF No. 51.
[40] Adv. No. 24-05012, ECF Nos. 61 and 63.
[41] Adv. No. 24-05012, ECF Nos. 90 and 91.
[42] Adv. No. 24-05012, ECF Nos. 88 and 89.
[43] Adv. No. 24-05012, ECF No. 88 at 2.
[44] Adv. No. 24-05012, ECF No. 89 at 2.

The Court then set for trial the determination of McGuffin's membership interest in Debtor. The Court determined at trial that McGuffin is a 30 percent member in Debtor and rendered judgment in McGuffin's favor.[45] The Trustee did not contest the Court's determination of the membership interests for Mendietta, Sprencel, and McGuffin. CES did not contest the judgment finding McGuffin's 30 percent membership interest. The Court's rulings on the denial of CES's motions and granting summary judgment for Sprencel and Mendietta are on appeal to District Court. Sprencel, as managing member, and Mendietta and McGuffin as members executed on October 16, 2024, a "Company Resolution Authorizing Continuation of Bankruptcy of Cinch Wireline Services, LLC."[46] The October 16, 2024, Resolution states in relevant part:

(1) The Company (Debtor) hereby ratifies and confirms all prior actions taken in connection with the filing of the Bankruptcy case and authorizes its continuation.
(2) Mendietta as Executive Vice President is authorized and directed to continue the prosecution of the Bankruptcy Case.
(3) Any and all actions by Pollard, Shumate, or other authorized persons in connection with the Bankruptcy Case are ratified, confirmed, and adopted as duly authorized acts of the Company.[47]

As a result of the foregoing, the Court must consider if the October 16, 2024, Resolution can ratify the December 13, 2023, Resolution so that the chapter 7 petition was authorized.

## FACTS

The Court finds that the following statement of facts to be consistent with all the parties' pleadings.

1.      On September 29, 2014, Frank Thomas Shumate Jr., on behalf of Cinch Energy Services, LLC ("CES") as organizer, formed Cinch Wireline Services, LLC ("CWS") via a

---

[45] Adv. No. 24-05012, ECF No. 113. Although not specifically stated in the Final Judgement, there appears to be a 5 percent outstanding membership interest for Debtor.
[46] Mendietta Ex. 11 [hereinafter "October 16, 2024, Resolution"].
[47] *Id.*

Certificate of Formation (the "Certificate of Formation"), filed with the Office of the Secretary of State for the State of Texas ("Secretary of State").[48] CWS was formed as a member-managed limited liability company ("LLC"), with two members: CES and Mary Kay McGuffin ("McGuffin"). No company agreement was filed with the Certificate of Formation. The Court lacked sufficient evidence to determine if CES and McGuffin executed a formal company agreement for Wireline.

2.      On or about February 28, 2017, Mark Lopez, on behalf of CES, Sprencel, and Mendietta executed a Company Agreement for CWS (the "Company Agreement").[49] On February 27, 2018, Shumate filed a Certificate of Amendment for Wireline (the "First Amendment") with the Secretary of State, amending Wireline's members to be: Energy, Sprencel, and Patron Wireline, L.L.C. ("Patron").[50]

3.      On August 25, 2020, McGuffin filed suit in Nueces County, in the 117th District Court, under Cause No. 2020DCV-3095-B (the "State Court Litigation"), against Wireline, Shumate, and CES, which began a years-long suit in state court to determine who were the rightful owners of Wireline.[51] On November 30, 2023, Sprencel filed a second Certificate of Amendment for Wireline (the "Second Amendment") with the Secretary of State, amending Wireline's members to be: Sprencel, Mendietta, and McGuffin.[52]

4.      On December 11, 2023, McGuffin filed her Third Amended Petition in the State Court Litigation, asserting that Wireline's members are Sprencel, Mendietta, and McGuffin, and

---

[48] Adv. No. 24-05012, ECF No. 53-8. The Certificate of Formation is attached as Exhibit A to Simmon's Brief. (ECF No. 315, Ex. A).
[49] Adv. No. 24-05012, ECF No. 53-1. Based on the evidence provided over multiple hearings, the Court is unconvinced if the Company Agreement is effective.
[50] ECF No. 315, Ex. C.
[51] ECF No. 141 ¶ 17; ECF No. 141-2.
[52] The Second Certificate of Amendment for Debtor is attached as Exhibit D to Simmons's Brief. (ECF No. 315, Ex. D). The parties in Adv. 24-05012 disputed whether the Second Certificate of Amendment was effective.

that CES is not a member of Wireline.[53] As noted herein, two days later—on December 13, 2023, Pollard, as "Executive Vice President," filed a voluntary petition for bankruptcy relief on behalf of Wireline, under chapter 7 of the Bankruptcy Code. Shumate and Lopez, on behalf of CES, purportedly authorized the filing of the Petition. In conjunction with the filing of the Petition, John Patrick Lowe was appointed as the chapter 7 Trustee.

5.      Neither Pollard nor did Debtor's counsel file a company resolution with the petition, authorizing Pollard to file the Bankruptcy Case.

6.      On December 27, 2023, Debtor filed its schedules and statement of financial affairs in the Bankruptcy Case. In its Schedules, Debtor states that CES is its 100% owner, and that Shumate and Lopez are the owners of CES. This is inconsistent with documents filed with the Secretary of State, but this also contradicts CES's own assertions against Mendietta, Sprencel, and McGuffin in Adv. No. 24-05012.

7.      On January 16, 2024, the Trustee conducted the first meeting of creditors which was continued to January 23, 2024 (and subsequently continued multiple times). The Trustee inquired as to whether the petition was properly authorized. According to Simmons, Sprencel, and Mendietta attended certain of the January meetings and advised the Trustee that they were members of Debtor, and CES was not a member of Debtor. At this point Simmons argues that the Trustee was on notice that the filing of the chapter 7 petition lacked the requisite authority.

8.      On January 19, 2024, Debtor filed amended schedules and statement of financial affairs ("Amended Schedules") in the Bankruptcy Case.[54] In its Amended Schedules, Debtor added the State Court Litigation to its list of pending legal actions.

---

[53] ECF No. 141 ¶¶ 18–21; ECF No. 141-3.
[54] ECF No. 27.

9.     On February 21, 2024, Trustee filed his application to employ Shelby Jordan and Butch Boyd (who represented McGuffin in the State Court Litigation) as his counsel. Neither Trustee nor his counsel ever raised the issue of whether Pollard was authorized to file the Debtor's petition.

10.     On April 2, 2024, at a hearing in the Bankruptcy Case regarding the enforcement of a subpoena against Loretta Higgins, counsel for Pollard raised with the Court the issue of whether the filing of the petition was authorized, and whether the Court had subject matter jurisdiction over the Bankruptcy Case:

> [B]efore the Court does any other business, seems to me that the Court would have to determine whether or not the membership interest claimed by all these parties is legitimate and find out who actually has the majority membership interest in this company so that the Court can determine whether or not it has jurisdiction in the first place.[55]

After questioning Debtor's counsel about whether the petition was properly authorized, the Court later stated:

> [T]here's been a suggestion that maybe there wasn't the appropriate corporate authority. Until that matter is raised with the Court through a motion signed under Rule 11, the Court will proceed on the assumption that the case was validly filed and that Mr. Lowe as the Trustee can prosecute his responsibilities.[56]

11.     On April 8, 2024, the Trustee filed suit against numerous defendants, including Shumate, Lopez, and CES (but not Mendietta, Sprencel, or McGuffin), initiating Adversary No. 24-05011.

12.     On April 9, 2024, CES filed its Original Complaint for Declaratory Judgment ("Complaint") against Mendietta, Sprencel, and McGuffin, initiating Adversary No. 24-05012, seeking a declaratory judgment that: (i) McGuffin and CES are the only two members of Debtor;

---

[55] ECF No. 77 at 13–14 (Transcript of April 2, 2024, hearing).
[56] *Id.* at 27.

(ii) Sprencel and Mendietta are not members of Debtor; and (iii) CES is the only "person/party with standing to invoke jurisdiction of the court to file the bankruptcy petition."[57]

13.     Further, in the Complaint, CES alleged that:

> [After forming Wireline, Energy and McGuffin] never signed a company Operating Agreement to govern the business affairs of Wireline. To date, [Wireline] during its entire existence has conducted business without an operating agreement. As such, [Wireline] operated by default in accordance with the Texas Business Organizations Code section that pertain to Texas Closely Held Limited Liability Companies.

*Id*. ¶ 18.

14.     In the Complaint, CES also asserted:

> The Bankruptcy cannot move forward without knowing and establishing who the members of [Wireline] are as a matter of law. If Sprencel and Mendietta are allowed to claim a majority membership interest in [Wireline], it will create uncertainty regarding which group of members and/or manager had standing to file the original bankruptcy petition. If the interested party that authorized the filing of the Bankruptcy Petition was not actually a member at the time of the filing, the Court would lack jurisdiction to proceed with the case.

*Id*. ¶ 22.

15.     Between April 24, 2024, and December 11, 2024, in Adv. No. 24-05011, counsel for Shumate, Pollard, and Tim Pollard Construction, Inc. ("Pollard Construction") filed five answers with motions to dismiss based on subject matter jurisdiction.[58]

16.     On July 2, 2024—almost seven months after the filing of the chapter 7 petition—Trustee completed the meeting of creditors. At this point in the litigation, Trustee knew of the dispute as to ownership of Debtor and whether Pollard was authorized to file the petition—based

---

[57] Adv. No. 24-05012, ECF No. 1 ¶ 23.

[58] Adv. No. 24-05011, ECF Nos. 47 (Shumate), 61 (Shumate), 303 (Pollard), 374 (Pollard), 381 (Pollard Construction). The Court dismissed both of Shumate's and one of Pollard's answers/motions to dismiss for failing to attach a proposed or separately upload a proposed order. (Adv. No. 24-05011, ECF Nos. 53, 72, and 378). Pollard's first answer and motion to dismiss under ECF No. 303, in response to the Trustee's first amended complaint, appears to have been superseded by his second answer and motion to dismiss under ECF No. 374, in response to the Trustee's second amended complaint. This adversary proceeding has been plagued by a failure to adhere to the Federal Rules of Bankruptcy Procedure and Local Rules.

on the filings and hearings in the Bankruptcy Case and in the pending adversary proceedings. At times the Trustee asked about the proper authority to file the petition, but ultimately chose not to raise the issue of jurisdiction with the Court or require the parties to show evidence that the filing was properly authorized.

17.     On October 3, 2024, in Adv. No. 24-05012, due to CES's failure to answer Sprencel's and Mendietta's requests for admissions, participate in discovery, and file timely responses to Sprencels' and Mendietta's summary judgment motions—the Court entered orders granting summary judgment in favor of Sprencel and Mendietta, and, on November 13, 2024, the Court entered a Final Judgment (the "Judgment"), which states: (i) Mary Kay McGuffin is a 30 percent member of the Debtor; (ii) Justin Sprencel is a 45 percent member of the Debtor; (iii) Michael Mendietta is a 20 percent member of the Debtor; and (iv) Cinch Energy Services, LLC is not a member of the Debtor.[59]

19.     On January 29, 2025, the Court conducted a hearing (the "January 29 Hearing") in connection with certain pending matters in the Bankruptcy Case and Adv. No. 24-05011, at which Debtor's counsel, under direct examination by the Court, could not sufficiently answer basic questions about the filing of the chapter 7 petition, including who the members of CWS were at the time of the filing of the petition and if he had any documents evidencing who those members were at the time of the filing. Consequently, the Court questioned whether it has subject matter jurisdiction over the Bankruptcy Case and ordered any parties wishing to file a brief on the relevant issues to do so.

20.     All parties in interest were directed to file briefs (no responses or replies) in support of or opposed to this Court having jurisdiction over the Bankruptcy Case. The parties were also

---

[59] Adv. No. 24-05012, ECF Nos. 88, 89, and 113. This decision is currently on appeal. *See id.* at ECF No. 116.

asked to brief if the Court could continue to have jurisdiction over Adv. No. 24-05011 if the related Bankruptcy Case was dismissed. The Court set a hearing on the briefing on February 25, 2025. The Court then took the matters under advisement. The Court asked the parties to brief and argue the following issues: (1) when is subject matter jurisdiction established when a bankruptcy case is filed; (2) at the time of filing did CES and Pollard have the requisite authority to file Debtor's chapter 7 petition; (3) assuming that the filing of the petition was not properly authorized, could Mendietta, Sprencel, and McGuffin ratify the filing of the petition under the TEX. BUS. ORGS. CODE ANN. § 101.001 et seq. [hereinafter "TBOC"]; and (4) if the Court finds that it lacked subject matters jurisdiction, may the Court retain Adv. No. 24-05011 under the Fifth Circuit's precedent in **Querner v. Querner (In re Querner)**, 7 F.3d 1199, 1201 (5th Cir. 1993)?

## PARTIES CONTENTIONS

Defendants in Adv. No. 24-05011 Simmons Bank, Los Cabos Ranch, Mark Lopez, Tim Pollard, Tim Pollard Construction, 17 Main, LLC, and CES favor dismissal. Trustee Lowe, Debtor, and interested parties Michael Mendietta, Justin Sprencel, and Mary Kay McGuffin ask the Court to retain jurisdiction over the Cinch Wireline, LLC bankruptcy, or, if the case is dismissed; retain jurisdiction over Adv. No. 24-05011.

Parties arguing for dismissal maintain that a bankruptcy case must have the requisite authorization to file the petition on the date of the filing of the petition. These parties assert that Pollard did not have the proper authority to execute and file the petition. As a result, without proper authorization to file the petition, the Court cannot exercise its subject matter jurisdiction over the case. Moreover, without the requisite authority at the time of the filing of the petition, ratification of the act cannot cure this "fatal defect." Parties favoring dismissal argue that without a properly authorized bankruptcy petition, the Court's subject matter jurisdiction was not properly invoked.

15

Therefore, without the underlying subject matter jurisdiction in the main bankruptcy case, the Court cannot have subject matter jurisdiction in the adversary proceeding.

Parties arguing that the Court has subject matter jurisdiction argue that the TBOC § 101.056 allows ratification of a void or voidable action, including a chapter 7 filed without the requisite authority. This ratification could be made with apparent, if not, actual authority. There is support in the record in this case and related state court proceedings that Pollard acted with the apparent authority to conduct business on behalf of CES, and Debtor. The parties also allege that because the main bankruptcy case and related adversary proceeding have been pending for months, and that no one previously objected, all parties have consented to the chapter 7 petition by implied ratification. Finally, the parties contend that should the Court find that it does not have subject matter jurisdiction over the bankruptcy case, it would be prejudicial to creditors not to retain jurisdiction over Adv. No. 24-05011.

## DISCUSSION

### I.     Jurisdiction is Determined on the Filing of the Petition

The filing of a bankruptcy petition commences a "case" under the Bankruptcy Code and establishes subject matter jurisdiction for the court, pursuant to 28 U.S.C. § 1334. *See Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 568 (5th Cir. 1995) (explaining that the power to hear a "case under title 11" is the power to hear the "bankruptcy petition, itself") (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987)).

"State law . . . determines who has the authority to file a voluntary petition on behalf of the corporation." *Franchise Servs. of Am., Inc. v. United States Trustee (In re Franchise Servs. of Am., Inc.)*, 891 F.3d 198, 206 (5th Cir. 2018) (citing *Price v. Gurney*, 324 U.S. 100, 106–07 (1945); *In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11 Cir. 2015)). In *Franchise Services*, the Fifth Court stated:

> If the petitioners lack authorization under state law, the bankruptcy court has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority. Rather, they must have it at the time of filing. Absent a duly authorized petition, the bankruptcy court has no power to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims.

891 F.3d at 206–07 (quoting *Price*, 324 U.S. at 106–07) (internal quotations omitted).

Simmons and CES maintain the Fifth Circuit has been clear that the person who files a bankruptcy petition must have authority to do so at the time of filing. In other words, the Fifth Circuit held in *In re Franchise Services* that the person who signs a bankruptcy petition must have had actual authority to do so at the time the petition is filed, not that they can obtain that authority post-petition (*e.g.*, through ratification).

The parties opposing dismissal argue that it would be inequitable to dismiss the bankruptcy case at this juncture given the fraud identified in the case, the cost to creditors, and the abuse of the bankruptcy system. These parties also argue that the Court can find jurisdiction over the bankruptcy case, employing a look back application through both apparent authority and ratification of the filing of the chapter 7 petition. Further, these parties argue that any of authority cited in favor of dismissal is distinguishable because those cases dealt with a challenge to the Court's subject matter early in the case, as opposed to here where the main bankruptcy case and related adversary proceedings have been pending for months.

This Court cited at the January 29, 2025, hearings the Fifth Circuit's opinion in *Carver v. Atwood*, which stated that "dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction." 18 F.4th 494, 497 (5th Cir. 2021) (citing Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")); *Ex parte McCardle*, 74 U.S. 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and

dismissing the cause."). It was at the January 29, 2025, hearings in this matter that the Court concluded that there was an issue regarding if the December 13, 2023, Resolution was properly executed and filed. Moreover, given this Court's entry of a Judgment in Adv. No. 24-05012 that Sprencel, Mendietta, and McGuffin (and not CES) were the members of Debtor, the Court questioned how the chapter 7 petition could be filed by Pollard on behalf of CES, the alleged 100 percent owner of Debtor. Finally, the Court also learned that after the Court entered Judgment in Adv. No. 24-05012, Sprencel, Mendietta, and McGuffin ratified the filing of the chapter 7 petition by Pollard. This Court *sua sponte* raised the issue of subject matter jurisdiction and any argument that the parties waived or consented to this Court's subject matter jurisdiction is not dispositive of whether subject matter jurisdiction exists.

Simmons and Trustee argue that for the Court to have subject matter jurisdiction over the Bankruptcy Case, Pollard must have been properly authorized, pursuant to Texas law, to file the Petition for Wireline—at the time of filing.

The time-of-filing rule—that subject matter jurisdiction is determined when a federal court's jurisdiction is first invoked—is "hornbook law." ***Double Eagle Energy Serv., L.L.C. v. MarkWest Utica EMG, L.L.C.***, 936 F.3d 260, 263 n.1 (5th Cir. 2019) (citing ***Grupo Dataflux v. Atlas Glob. Grp., L.P.***, 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting ***Mollan v. Torrance***, 22 U.S. 537, 539 (1824))). "Although courts have not often considered the time-of-filing rule for cases related to bankruptcy, it applies to bankruptcy jurisdiction no less than it applies to diversity or federal question jurisdiction." *Id.* (citing ***In re Canion***, 196 F.3d 579, 586 n.29 (5th Cir. 1999)).

Trustee argues that ***Peterson v. Atlas Supply Corp. (Matter of Atlas Supply Corp.)***, 857 F.2d 1061, 1064 (5th Cir. 1988) requires the Court to consider if creditors will be prejudiced by dismissal:

> If dismissal would prejudice the creditors, then it will ordinarily be denied. (citation omitted). Delay in satisfying creditors' claims can be sufficient to preclude dismissal. *Id.* For example, the creditors may be prejudiced when a motion to dismiss is filed long after bankruptcy is initiated, since the creditors have already been stayed from debt collection for that period of time and dismissal would erase the benefit of that delay and force them to reinitiate procedures for debt collection from the start. (citation omitted). Such is the case here. The bankruptcy judge found that the creditors would be prejudiced if the case were dismissed since the automatic stay had been in effect for more than three years and since there was no guarantee that Atlas's assets would be preserved if the trustee lost control.

***Atlas Supply Corp.***, 857 F.2d at 1063.

Further, Trustee and parties that support the Court retaining jurisdiction note that in ***Atlas Supply Corporation***, the Fifth Circuit held that a party's failure to object to the court's jurisdiction on the grounds that the filing of the petition was not authorized could serve as a bar to the requirement that a court dismiss the case. The Fifth Circuit found:

> Finally, we reject the appellants' main argument that the bankruptcy judge should have dismissed the petition because it was never properly authorized by the corporation. The bankruptcy judge found that Peterson was barred from objecting on those grounds because she waited too long to object. Peterson knew of the bankruptcy petition in January 1983. She did not file her first motion to dismiss until March 1984. In the meantime, the creditors were held off while the bankruptcy trustee incurred significant expenses liquidating the estate. Also, during that period, Peterson seems to have been concerned primarily with personal ownership of the life insurance policy, first by attempting to purchase it, and then by asserting a claim over it. We agree with the bankruptcy judge that Peterson's excuse of avoiding unnecessary litigation expenses is insufficient under the circumstances of this case. Accordingly, we hold that the bankruptcy judge did not err in concluding that by waiting over a year before objecting, Peterson forewent her right to complain that the bankruptcy petition was not authorized by the corporation.

*Id.* at 1064.

19

The Fifth Circuit court's ruling in ***Atlas Supply Corporation*** follows its holding in ***Alexander v. Farmers' Supply Co.*** (***In re Farmer's Supply Co.***), 275 F. 824 (5th Cir. 1921) where the court determined that a shareholder's objection to a petition that was unauthorized was dismissed:

> We are of the opinion that, if Alexander had the right to defeat the voluntary petition in bankruptcy filed in the name of Farmers' Supply Company, because there was no proper corporate action authorizing the institution of the proceeding, he lost that right by his silence and inaction under the circumstances and for the length of time above indicated. His conduct, with full knowledge of what was going on, was such as to support an inference that he acquiesced in the bankruptcy adjudication, and in the administration and disposition under the orders of the court of the property of the corporation, which came into the court's possession as a result of the adjudication.

*Id*. at 826. (citations omitted).

The Fifth Circuit in ***Atlas Supply Corporation*** found that ***Farmer's Supply*** was instructive because:

> The court in *Farmers'* did not rely on the futility of an objection by so small a shareholder, but rather on the failure of the shareholder to make his objection in a timely fashion, given that he knew of the bankruptcy case. Here, although Peterson knew of the bankruptcy proceeding for over a year, she did not voice her objection to it; indeed, she actually took actions consistent with the proceeding, such as attempting to purchase the life insurance policy and later asserting a claim over the policy. Thus, in this case, as in Farmers', lack of corporate authorization is not an available objection to the bankruptcy petition.

*Id*. at 1064 (citations omitted).

When analyzing whether a party could waive (not ratify) a petition for failing to move for dismissal timely upon learning that a petition was filed without authorization, both Simmons and CES note that ***Atlas Supply Corporation*** and ***Farmer's Supply*** are distinguishable. Importantly, in ***Atlas Supply Corporation***, the Fifth Circuit did not consider jurisdiction in its analysis—it only considered the standard for dismissal under § 707(a) of the Bankruptcy Code, under "equitable principles." *See* ***In re Mid-South Bus. Assocs., LLC***, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016)

(declining to apply **Atlas Supply Corporation** and pointing out that the Fifth Circuit later "acknowledged that a bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority.") (citing **Treen v. Orrill, Cordell, & Beary, LLC (In re Delta Starr Broad., LLC)**, 422 F. App'x 362, 368 (5th Cir. 2011)). As in **Mid-South Business Associates**, CES argues this Court should likewise decline to apply **Atlas**.

CES argues **Matter of Atlas Supply Corp.**, 857 F.2d 1061 (1988) was not a challenge to the bankruptcy court's subject matter jurisdiction and provided no analysis of a bankruptcy court's jurisdiction over an unauthorized filing. Rather, a voluntary motion to dismiss was filed under § 707 by the administratrices of a director's estate based on a lack of authority due to the director being in a coma at the time of the bankruptcy filing. 857 F.2d at 1063. The court in **Atlas Supply Corporation** found that the administratrices waived their right to pursue dismissal due to their delay in filing the motion to dismiss. **Id**. at 1064. The court in **Atlas Supply Corporation** was not a *sua sponte* jurisdiction analysis by the Court and, thus, is distinguishable to the current Bankruptcy Case.

Similarly, the Fifth Circuit in **Alexander v. Famers' Supply Co.**, 275 F. 824, 826 (5th Cir. 1921) analyzed a party who sought dismissal of the bankruptcy case but was found to have waited too long to seek dismissal. The issue here is not whether CES or any other party-in-interest waived its right to seek dismissal. Rather, the Court has *sua sponte* raised the issue of subject matter jurisdiction, and the cases cited by the Trustee and other parties who are opposed to dismissal fail to address a court's *sua sponte* determination that it lacks subject matter jurisdiction. CES says the authorities cited by the Trustee are unpersuasive and not instructive as to whether the Court must dismiss for lack of subject matter jurisdiction on its own initiative.[60]

---

[60] The Fifth Circuit held in **United States v. Spurlin**, 664 F.3d 954, 959 (5th Cir. 2011) that a spouse could be held liable for bankruptcy crimes resulting from the filing of a joint petition with her spouse even though the spouse did

There were additional non-precedential cases that the parties discussed, arguing that the Court should or should not consider involving dismissal of the case for lack of authority. As previously discussed, in **Mid-South Business Associates, LLC**, the court reviewed whether **Atlas Supply Corporation** was a bar to a litigant in that case for failure to raise subject matter jurisdiction timely. 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016). **Mid-South Business Associates** involved the timeliness of a § 1112(b) for "cause" for lack of subject matter jurisdiction. **Id**. The debtor, relying on **Atlas Supply Corporation**, argued that the movant waited over 18 months to file the motion to dismiss and that the movant waived his right to dismiss the case. The Mississippi bankruptcy court disagreed, holding that: "In a later case, however, the Fifth Circuit acknowledged that a bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority." **Id**. (citing **Treen v. Orrill, Cordell, & Beary, LLC (In re Delta Starr Broad., LLC)**, 422 Fed. Appx. 362, 368 (5th Cir.2011)("Any suit lacking subject matter jurisdiction must be dismissed regardless of how long a case has been pending.")(citing **Temple Drilling Co. v. La. Ins. Guar. Ass'n.**, 946 F.2d 390 (5th Cir.1991))). The Mississippi bankruptcy court noted that although **Delta Star** was an unpublished case, its reliance on prior Supreme Court precedent was instructive because the Fifth Circuit found "that those who purport to act on behalf of the corporation [who] have not been granted authority by local law to institute the proceedings, [the court] has no alternative to dismiss the petition." **Id**.[61]

---

not sign the petition and granted a power of attorney to her husband to file the petition. The Fifth Circuit found that in that case a power of attorney was sufficient to bind the other spouse for bankruptcy crimes, reasoning that "[a]lthough certain matters are too personal to be entrusted to another, bankruptcy is primarily for property protection and is not as profoundly personal as divorce or enlistment. Declaring voluntary bankruptcy is about saving a person's assets where all else fails, and entrusting management of one's property to that someone includes giving him the tools to protect as much as he can if the worst happens." **Id**. **Spurlin** is factually different than the case at bar and does not have the issue of members of an LLC attempting to ratify prior acts of other members of the same LLC. While **Spurlin** does involve the issue of ratification, it does not involve application of a state statute.

[61] Trustee argues that the Mississippi bankruptcy court reversed itself in a later opinion, finding that there could be corporate authority to file a case retroactively through ratification. **Bobbie Chance Robinson & Commercial Grain Marketing, LLC v. Smith (In re Smith)**, 582 B.R. 417, 412 (Bankr. N.D. Miss. 2017). The Mississippi bankruptcy

Parties in support of this Court retaining jurisdiction argue that ***Hager v. Gibson***, 108 F.3d 35 (4th Cir. 1997) supports jurisdiction for this case. In ***Hager***, a two-owner corporation was put into bankruptcy by one of the corporate owners, who had a fifty percent interest. ***Id***. at 38. Twenty months later, the corporate owner who did not consent to the filing argued that the bankruptcy court lacked authority over the case because both members did not consent to the bankruptcy filing and that the case should be dismissed. ***Id***. The bankruptcy court disagreed, finding that the doctrine of laches applied and that it was too late to raise a jurisdictional argument. ***Id***. The district court disagreed with the bankruptcy court, noting that laches did not apply because the subject matter jurisdiction could be raised at any time. ***Id***. Nonetheless, the district court found that Virginia state law allowed for ratification of the owner's authority to file the petition. ***Id***. On appeal to the Fourth Circuit, the court had to consider whether ***Price v. Gurney*** precluded ratification because ***Price*** held that a petition filed without the requisite authority gives a bankruptcy court no power over the petition. ***Id***.

The Fourth Circuit noted that ***Price*** did not address whether the required authorization under local law could be acquired through ratification. ***Id***. at 39. The Fourth Circuit found that:

> "[U]nder Virginia law, the unauthorized filing of a voluntary petition in bankruptcy in behalf of a corporation might be ratified in appropriate circumstances by ensuing conduct of persons with power to have authorized it originally. Under such circumstances, it could therefore serve as the local law source of the authority required by *Price v. Gurney* for a voluntary bankruptcy filing in behalf of a corporation.

***Id***. at 40 (footnote omitted).

The Fourth Circuit reasoned that a "jurisdiction-by-consent contention simply misconceives the basis of the rule that subject matter jurisdiction cannot be so created. That rule

---

court found that ***Smith*** was distinguishable for two reasons: ***Mid South*** did not consider the issue of ratification and ratification in ***Smith*** was being applied to an adversary proceeding, not a petition under the Bankruptcy Code. ***Id***. at 421.

is concerned with litigation conduct aimed at, or urged as having created, subject matter jurisdiction that does not as an objective matter exist." *Id*. at 41. The Fourth Circuit then stated:

> Ratification conduct is not of this sort, but involves extra-judicial primary conduct by parties that does not purport to waive jurisdictional requirements nor to forego objection to their absence as incidents of a litigation process in which they may then or later be involved. Though its substantive effect may be, as in this case, the supplying by relation-back of a necessary jurisdictional fact, the result is a court then proceeding with an objectively grounded jurisdiction rather than—as the no-jurisdiction-by-consent rule is intended to prevent—without it.

*Hager*, 108 F.3d at 41.

Apparently, ***Hager*** placed little emphasis on subject matter jurisdiction being determined at the time of filing. In fact, ***Hager*** was critical of the time-of-filing rule for subject matter jurisdiction and noted that "this rule is not one of statutory or constitutional limitation upon the jurisdiction of federal courts but, exists simply as "one of federal interstitial common law, judicially created, grounded in policy and necessity—the necessity to have a generally applicable and easily administered rule." *Id*. (internal quotations omitted). Moreover, the Fourth Circuit found that [t]he relation-back principle, though a legal fiction, is a well-established substantive one having wide application. *Id*. (citations omitted). The Fourth Circuit concluded that "jurisdiction-as-of-commencement-of-action rule does not prevent that result." *Id*. (citations omitted).

This Court could not find any Fifth Circuit case that has followed ***Hager***. Rather, there is binding precedent in this Circuit and the Supreme Court that contradicts ***Hager***. Parties in support of dismissal argue that federal subject matter jurisdiction must exist at the time of filing. This is consistent with the Fifth Circuit's rule in ***Franchise Services***—that the person who files a bankruptcy petition must have authority to do so at the time of filing. *See* 891 F.3d at 206–07 ("It is not enough that those who seek to speak for the corporation may have the right to obtain that authority [e.g., through ratification]. Rather, they must have it at the time of filing."). Moreover,

federal jurisdiction, generally, is established based on the facts as they existed at the time of filing, rather than events that occurred after the filing. *See United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 782 F. Supp. 2d 248, 260 (E.D. La. 2011) ("The notion that a court cannot proceed if it lacked jurisdiction at the time the original complaint was filed is consistent with the 'time-of-filing rule,' under which 'the jurisdiction of the Court depends upon the state of things at the time of the action brought[.]'") (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)).

The Supreme Court has held that diversity jurisdiction cannot be established retroactively, via ratification or some other action. *See id.*; *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–82 (2004) (extensively analyzing whether post-filing actions can cure a jurisdictional defect, in the context of diversity jurisdiction under 28 U.S.C. § 1332 and holding that jurisdiction cannot be created retroactively). In *Grupo Dataflux*, Justice Scalia stated in conclusion:

> We decline to endorse a new exception to a time-of-filing rule that has a pedigree of almost two centuries. Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful. The stability provided by our time-tested rule weighs heavily against the approval of any new deviation.

541 U.S. at 582.

This is equally true in the case of bankruptcy jurisdiction under 28 U.S.C. § 1334(b). *See Double Eagle Energy Servs., L.L.C.*, 936 F.3d at 263 (citing *Grupo Dataflux* and stating: "That longstanding rule promotes efficiency; it would be 'wasteful' if post-filing changes in 'the facts determining jurisdiction' required dismissal of a case to which the parties and court had already devoted resources."). The Court holds that based upon Supreme Court and Fifth Circuit precedent, jurisdiction (absent the possibility of ratification) is established at the time of the fling of the

petition and subject matter jurisdiction cannot be waived. Further, the Court has the authority to raise it at any time during a case or proceeding.

## II.    Actual or Apparent Authority

As an initial matter, some of the parties in this case have failed at times to follow the usual and requisite legal requirements of operating an LLC under the Texas Business and Commerce Code. Further, Pollard and Shumate have been derelict in their responsibilities as representatives of Debtor. Since Wireline's formation in 2014, based on the Certificate of Formation, First Amendment, and Second Amendment, there have potentially been three combinations of members: (1) CES and McGuffin; (2) CES, Sprencel, and Patron; and (3) Sprencel, Mendietta, and McGuffin. Assuming there was not an effective company agreement at the time of the filing of the Bankruptcy Case—under any of these three membership combinations—Shumate and Lopez, on behalf of CES could not have properly authorized Pollard to file the chapter 7 petition. The TBOC requires a majority of the members (determined per capita—i.e., one member, one vote—not by percentage interest) of the company to affirmatively vote (at a meeting with a quorum) to approve an act of the company. TBOC §§ 101.354, 101.355, 101.356(b). The December 13, 2023, Resolution shows that Shumate, Lopez, and Pollard conducted a meeting to vote on whether to file a bankruptcy. CES asserted in Adv. No. 24-05012 that CES and McGuffin are the members of Debtor as do the Secretary of State records. Without McGuffin's vote to approve the filing of the chapter 7 petition, CES never constituted a majority of the members of CWS. Therefore, CES, by itself—under any of the above three scenarios—did not have the authority under the TBOC to direct Pollard to file the petition. As such, there was no actual authority to file the chapter 7 petition.[62]

---

[62] The Court is aware that in the Schedules Shumate and Lopez are listed as the 100 percent owners of CES, which in turn owns Debtor. Neither Pollard nor Shumate have much, if any, credibility with the Court. As such, although the

Under the TBOC, the "governing authority . . . shall direct the management of the business and affairs of the company and exercise or authorize the exercise of the powers of the company as provided by [] the company agreement" and Titles 1 and 3 of the TBOC "to the extent the company agreement does not provide for the management of the company" (or there is no company agreement). TBOC § 101.252. If an LLC's certificate of formation reflects that there are no managers, then the members of the LLC are the "governing authority." *See id*. § 101.251(b)(2). Here, the Certificate of Formation reflects that there were no managers, and CES and McGuffin were the original members, and therefore the original governing authority. There is no evidence that there was any company agreement when CES and McGuffin formed Wireline in 2014.

If the Company Agreement was effective, Shumate and Lopez, on behalf of CES still could not have authorized Pollard to file the petition.[63] Under the Company Agreement, CES has a 50 percent interest, Sprencel has a 30 percent interest, and Mendietta has a 20 percent interest—thus, no member alone has a majority percentage of the membership interests.[64] In order for the company take an action, with the requisite meeting and quorum, a "Simple Majority"—or "more than fifty percent (50%) of the Percentage Interests of all Members"—was required. *See* Company Agreement §§ 1.01, 8.01–.05. Under the Company Agreement, CES, by itself, did not have more than 50 percent of the membership interests in CWS, and there is no evidence that Shumate or Lopez otherwise complied with the requirements of the Company Agreement to authorize the filing.

---

Schedules were filed under penalty of perjury, neither Pollard nor Shumate knew much about Debtor, and it is not clear to the Court if they observed any requirements under the TBOC. The Schedules are inconsistent with Secretary of State filings and representations CES has made in other litigation.

[63] The Company Agreement is attached as Exhibit B to Simmons's Brief. (ECF No. 315, Ex. B). There are conflicting accounts as to whether there is a signed operating, company, or management agreement governing the management of the Debtor. However, at least one executed company agreement was attached as an exhibit to a motion for summary judgment in Adv. No. 24-05012. (ECF No. 51-6).

[64] ECF No. 315, Ex. B.

Additionally, the Company Agreement precludes any member from compelling "the sale of Company assets" or causing "the winding up of the Company." *See id*. § 3.03. This further supports the fact that CES, by itself, could not authorize the filing. Moreover, notwithstanding the Court's Default Orders and Judgment in Adv. No. 24-05012, if either the plaintiff (CES) or the defendants (Mendietta, Sprencel, and McGuffin) had prevailed, neither result would provide a basis to support the authorization of the filing. If the plaintiff had prevailed, CES and McGuffin would be the members, without a company agreement. If the defendants had prevailed (as the Court ordered, due to CES's default), then Mendietta, Sprencel, and McGuffin would be the members, and the Company Agreement would be effective (at least at one time). Therefore, neither of these combinations would allow Shumate and Lopez to unilaterally authorize the filing. As such, there was no actual authority to file Debtor's case.

Under Texas law, "apparent authority" is a doctrine of agency law that allows a third party to bind a principal to the acts of an agent when the third party reasonably believes the agent has authority to act on behalf of the principal, based on the conduct of the principal. *See* RESTATEMENT (THIRD) OF AGENCY §§ 2.03, 3.03 (AM. LAW INST. 2006); *Randle v. Crosby Tugs, L.L.C.*, 911 F.3d 280, 285 (5th Cir. 2018), *as revised* (Jan. 7, 2019); *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952–53 (Tex. 1996).

Simmons argues that the TBOC does not allow an agent to act without actual authority on behalf of an LLC's members under these circumstances. Section 101.254 of the TBOC provides:

a) Except as provided by this title and Title 1, each governing person of a limited liability company and each officer of a limited liability company vested with actual or apparent authority by the governing authority of the company is an agent of the company for purposes of carrying out the company's business.

(b) An act committed by an agent of a limited liability company described by Subsection (a) **for the purpose of apparently carrying out the ordinary course**

**of business of the company**, including the execution of an instrument, document, mortgage, or conveyance in the name of the company, binds the company unless:

> (1) the agent does not have actual authority to act for the company; and
> (2) the person with whom the agent is dealing has knowledge of the agent's lack of actual authority.

(c) An act committed by an agent of a limited liability company described by Subsection (a) **that is not apparently for carrying out the ordinary course of business of the company binds the company only if the act is authorized in accordance with this title**.

TBOC § 101.254(b)–(c) (emphasis added).

The purpose of this TBOC provision is to allow "the person with whom the agent is dealing" to bind the company to the agent's acts. And if the act is not in the ordinary course of business, which Simmons and CES argue that the filing of a bankruptcy case is not, then the act must be authorized—that is, Pollard must have had actual authority to file the petition. *See In re Emergency Hosp. Sys., LLC*, No. 24-34683, 2024 WL 4997341, at *5 (Bankr. S.D. Tex. Dec. 5, 2024) ("It is not ordinary for a limited liability company to file a bankruptcy."); *In re Roberson Cartridge Co., LLC*, No. 22-20192, 2023 WL 2393809, at *6 (Bankr. N.D. Tex. Mar. 7, 2023) (recognizing that the filing of a bankruptcy is not in the ordinary course of business and citing § 101.356 of the TBOC for authority); *see also In re Mid-South Associates*, 555 B.R. at 577 ("[I]t is well settled that a decision to file for bankruptcy protection is a decision *outside the ordinary course of business*, even for an entity in dissolution.") (citation omitted) (emphasis original). As set out above, Pollard did not have such authority. Accordingly, Simmons and CES argue the petition could not be authorized pursuant to "apparent authority." Pollard's filing of the petition was not for the "purposes of carrying out [the Debtor's] business," which is mineral related and does not involve filing bankruptcy petitions. *See id.* § 101.254(a). The parties in opposition do not

address this point and simply maintain that ratification is all that is necessary to make the petition timely and for the Court to have jurisdiction.

Interested parties Mendietta and McGuffin argue that Pollard acted with apparent authority. They argue that the record evidence clearly demonstrates that Timothy Pollard, as Executive Vice President, and Frank Shumate, as President of CWS and CES, acted with apparent authority to initiate the filing. This apparent authority arises from the actions and representations made by CWS's leadership, which led third parties—including this Court and creditors—to reasonably believe that they possessed the authority to act on behalf of the Debtor. Mendietta and McGuffin argue that the following facts demonstrate Pollard's apparent authority.

On September 21, 2022, Pollard, acting under the authority of CES, signed a verification to initiate a complaint and an application for a Temporary Restraining Order and Temporary Injunction against Mendietta in the 407th Judicial District of Bexar County, Cause No. 2022CI18727.[65]

On November 2, 2022, during the hearing for Plaintiff's Motion for Temporary Injunction in Cause No. 2022CI18727 in Bexar County, CES's attorney (at that time), Paul O'Finan, stated to the court that Pollard is an officer of the company.[66] During voir dire, Pollard testified that he works for both CES and the CWS. Pollard further stated under oath that the owners of CWS are Frank Tom Shumate, Mark Lopez and Justin Sprencel.[67] Also, during voir dire, the issue of authority was raised and questioned. During argument O'Finan, reaffirmed that Pollard was "the one that signed off on the lawsuit" and indicated that Lopez could vouch for Pollard's authority.[68]

---

[65] Mendietta Ex. 13 at 14.
[66] Mendietta Ex. 14 at 5–6 (Transcript of November 2, 2022, hearing).
[67] Mendietta Ex. 14 at 8–9.
[68] Mendietta Ex. 14 at 13–15.

On October 26, 2023, Pollard, acting under the authority of CES and CWS, signed a verification to initiate a complaint and an application for a Temporary Restraining Order and Temporary Injunction against Mendietta and Justin Sprencel in the 267th Judicial District of Jackson County.[69]

On December 13, 2023, Pollard as the Executive Vice President of CWS, issued a Corporate Resolution (the "instrument") authorizing the filing of the chapter 7 petition and the retention of counsel for the chapter 7 case.[70]

On January 16, 2024, under examination from the Trustee, Pollard testified that "There was a meeting with the owners . . . Tom Shumate and Mark Lopez." At this meeting, which Pollard admits to attending with the members of CES, authority was granted to Pollard to sign the bankruptcy petition.[71]

On March 14, 2024, during examination by Mr. Boyd, Special Counsel for the Trustee, Mr. Boyd questioned Pollard about whether he had authorization to file the chapter 7 case. Pollard responded "Yes. I stated that before—that's what I was told to do, that's what I did." He further stated that this direction came from Tom Shumate and Mark Lopez.[72]

On September 17, 2024, during the hearing on the Motion for Sanctions and Award of Damages for Knowing and Intentional Violations of this Court's Orders and the Automatic Stay, Mr. Boyd, Special Counsel for the Trustee, asked "Is it true that nothing can be done as it relates to these businesses without consultation with Mr. Shumate?" Pollard responded, "Correct." Boyd continued, "Okay, So you wouldn't make decisions of any importance without at least talking to Mr. Shumate, correct?" Pollard replied, "At some point before or after the decision's made, he's

---

[69] Mendietta Ex. 15 at 8.
[70] Mendietta Ex. 18. As noted herein, the December 13, 2023, Resolution was not properly filed.
[71] Mendietta Ex. 28 at 4–5 (Transcript of § 341 Meeting of Creditors, January 16, 2024).
[72] Mendietta Ex. 29 at 17–18 (Transcript of § 341 Meeting of Creditors, March 14, 2024).

aware of everything."[73] Shumate knows of actions you take, either before or after the fact?" Pollard responded, "Yes sir." Attorney Watts continued, "And that implies to me that you're authorized to take action and you just tell him about it afterwards?" Pollard replied, "Yes Sir."[74]

Mendietta and McGuffin assert these actions were not challenged at the time and created a reasonable perception that Pollard had the authority to act on behalf of CWS, including filing the petition. They claim Shumate's dual role as President of CES and CWS further reinforces the basis for his apparent authority. Additionally, Shumate actively participated in multiple meetings, including discussions with Debtor's attorney, James Wilkins, both prior to and during the bankruptcy proceedings.

During the January 29, 2025, hearing, attorney Canales examined Debtor's bankruptcy attorney, Wilkins, who testified that prior to the bankruptcy filing, he met Shumate, Pollard, and attorney Paul O'Finan at O'Finan's Law Office. Wilkins acknowledges that Shumate authorized Pollard to file the Chapter 7 petition and accompanying schedules.[75]

Mendietta and McGuffin argue that Pollard and Shumate exercised apparent authority by directly impacting both the filing and continuation of the Bankruptcy Case in several critical ways: The bankruptcy filing was treated as valid by this Court, and jurisdiction was established based on the reasonable belief that it was properly authorized. Both Pollard and Shumate participated actively in the case, signing schedules, attending § 341 meetings, and cooperating with the Trustee. Even opposing parties, such as CES and its related entities, acknowledged the Court's jurisdiction in several pleadings and did not raise immediate challenges to the authority behind the filing.

---

[73] Adversary Proceeding 24-05011, ECF No. 283 at 52 (Transcript of hearing on September 17, 2024).
[74] *Id.* at 86–87.
[75] Adversary Proceeding 24-05011, ECF No. 437 at 40–41 (Transcript of hearing on January 29, 2025).

Creditors relied on the petition and the protection of the automatic stay to pursue their claims in the bankruptcy process rather than in state court.

The Court does not dispute these contentions and acknowledges that the parties that have actively participated in this Bankruptcy Case and the Court believed that the Bankruptcy Case was filed with the proper authority. Subsequent events demonstrate that it was not. This is a consequence of the alleged members of CWS failure to adhere to basic corporate formalities. Some of the litigants in this Bankruptcy Case who argue that Pollard had apparent authority neglect to explain what that apparent authority was. Pollard has said that it was to avoid litigation, but the evidence adduced thus far shows a concerted effort to commit fraud. As such, the Court questions whether Pollard was authorized to discharge debt or commit fraud. Clearly, everyone involved but for CES at one time believed there was at least apparent authority at one time to file the Bankruptcy Case. Over time that belief should have eroded as litigation progressed. The parties in favor of this Court retaining jurisdiction argue that this apparent authority can be ratified. The Court disagrees, based upon the facts and circumstances of this case.

The Court recognizes the time and effort expended in this case. The Court has expended considerable time and effort in presiding over these matters. The "tipping points" in this case were the Court's determination in Adv. No. 24-05012 that Sprencel, Mendietta, and McGuffin are the Debtor's members, months after the chapter 7 petition was filed and after the Court learned that the December 13, 2023, Resolution was not filed in this case.[76]

---

[76] Some of the parties describe the Court's granting of Sprencel's and Mendietta's motion for summary judgment as "default orders." The Court does not accept that attribution. The Court allowed CES's counsel the opportunity to argue why he missed filing responses to the summary judgment motions, finding that CES's counsel's explanation unavailing and inconsistent given that counsel was made aware from other proceedings about the obligation to respond. Also, the Court did hold hearings on the summary judgment motions and required counsel to put on competent summary judgment proof. As such, the "default" was completely unavoidable on multiple levels and is indicative of some of the negligence in this case.

### III.    Ratification

In 2023, the Texas legislature significantly amended the TBOC, adding § 101.056, among others, which became effective September 1, 2023. To date, no opinions have been issued interpreting § 101.056 (or the comparable provision for partnerships). Subsection (a) provides that any "act . . . taken by or with respect to a limited liability company under this code or a company agreement that is void or voidable when taken may be ratified[.]" TBOC § 101.056(a). More pertinently, Subsection (b) provides:

> An act . . . may be ratified or waived, as applicable, with the approval of the members . . . **whose approval would be required under the company agreement at the time of the ratification** or waiver:
> (1) for the void or voidable act . . . to be validly taken; or
> (2) to amend the company agreement in a manner that would permit the void or voidable act . . . to be validly taken.

*Id*. § 101.056(b) (emphasis added).

There is a dispute if the Company Agreement (from 2017) was ever valid, and it is questionable whether it could even be applicable at the time of petition filing (with a different membership structure), or whether any company agreement existed at the time of ratification. As such, it is uncertain whether TBOC § 101.056 could apply to the ratification of an act of CWS by Mendietta, Sprencel, and McGuffin, notwithstanding the issue of jurisdiction.

Ratification under Texas state law requires the members of an LLC to approve ratification of the prior defective act. TBOC § 101.056(b). Mendietta, Sprencel, and McGuffin are only members of Debtor if the petition was duly authorized. CES posits there are only two solutions to this case: either (i) the Court finds that the petition was not duly authorized, the Bankruptcy Case was improperly commenced by CES, who did not have authority to commence it, and the Court lacks subject matter jurisdiction over the Bankruptcy Case, which the Court must dismiss; or (ii) the Court contradicts its own ruling regarding the membership interests in Adv. No. 24-05012 by

finding that CES was a member of Debtor who authorized the petition at the time of its filing. CES argues there is no middle ground for the Court to rule upon, and any attempt to strike a balance would violate binding precedent that requires the bankruptcy court to have jurisdiction before it shifts management powers between parties, as this Court has done pursuant to the Final Judgment. *See Price*, 324 U.S. at 106 ("If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, ***it has no alternative but to dismiss the petition***.") (emphasis added).

Simmons acknowledges that the Fifth Circuit has previously held (without addressing jurisdiction) that a bankruptcy petition may be ratified post-petition, under certain circumstances. *See **Atlas Supply Corporation***, 857 F.2d at 1063–64 (holding the petition was ratified based on waiver); ***Spurlin***, 664 F.3d 954 at 959–60 (holding that, under the ***Ballard*** rule a general power of attorney may be used to file a bankruptcy petition on behalf of another, and finding that the wife (Mrs. Spurlin) had ratified her husband's filing of a joint bankruptcy under a general power of attorney). Both cases are distinguishable, and the Court adopts its earlier discussion of ***Atlas Supply Corporation*** and ***Spurlin*** as to why ratification does not apply. ***Atlas Supply*** and ***Spurlin*** are not cases involving subject matter jurisdiction.

As noted herein, ***Atlas Supply Corporation*** did not consider jurisdiction in its analysis—it only considered the standard for dismissal under section 707(a) of the Bankruptcy Code, under "equitable principles." *See also **In re Mid-South Bus. Assocs.***, LLC, 555 B.R. at 570 (declining to apply ***Atlas*** and pointing out that the Fifth Circuit later "acknowledged that a bankruptcy court lacks subject matter jurisdiction over a bankruptcy petition filed without the required corporate authority.") (citing ***Treen v. Orrill, Cordell, & Beary, LLC (In re Delta Starr Broad., LLC)***, 422 F. App'x 362, 368 (5th Cir. 2011)). In ***Spurlin***, the court also did not address jurisdiction.

Further, while the court, in the context of ratification, applied the ***Ballard*** rule—that a general power of attorney may be used to file bankruptcy on behalf of another—the court stated: "***Ballard*** requires that when a general power of attorney is used to file for bankruptcy, the person on whose behalf the power is used must be notified. If that person says that he does not authorize the filing, the bankruptcy proceedings are dismissed." ***Spurlin***, 664 F.3d at 959 (emphasis added). Based on Mrs. Spurlin's knowledge of the power of attorney and her failure to raise the issue of authorization during the case, the court concluded that there was enough evidence to infer ratification. *Id.* at 960. Shumate, Lopez, and Pollard had no power of attorney for the other members; no other member was notified of the filing and asked to express whether they authorized the filing at the time. Accordingly, ***Spurlin*** is also inapposite.

Parties in favor of ratification maintain that although Mendietta, Sprencel, and McGuffin did not have the power to authorize the filing of the Petition *originally*—they *later* obtained authority on a post-petition basis when the Court ruled in Adv. No. 24-05012 that Mendietta, Sprencel, and McGuffin were the members of Debtor, thereby shifting corporate ownership during the Bankruptcy Case. These parties state that ratification was accomplished both by express resolution and by implication.

Parties arguing in support of ratification state that "where a voluntary petition for bankruptcy is filed [on] behalf of a corporation, the bankruptcy court does not acquire jurisdiction unless those purporting to act for the corporation have authority under local law to institute the proceedings." ***In re Mojo Brands Media, LLC***, No. 6:15–bk–03871, 2016 WL 1072508, at *1 n. 2–3 (Bankr. M.D. Fla. 2016). "If permitted under state law, however, an unauthorized bankruptcy petition filed on behalf of a corporation may be ratified by an entity that had the power to authorize the filing originally, where the entity failed to timely raise the issue of authorization and/or

participated in the bankruptcy proceeding." *Id*. (citations omitted). Parties in support of ratification state the rule is the same in Texas and the Fifth Circuit, as it is in Florida and the Eleventh Circuit. *Atlas Supply Corp.*, 857 F.2d at 1064 (express ratification); *Spurlin*, 664 F.3d at 960 (implied ratification by failure to object); *see In re Matthews,* 516 B.R. 99, 104–05 (Bankr. N.D. Tex. 2014) (finding a petition may be filed for a debtor through a power of attorney).

Parties in favor of this Court retaining jurisdiction maintain that in this context, the Fifth Circuit considers "local law" to mean the forum state's law governing business entities such as the Debtor. *Franchise Services,* 891 F.3d at 206; *see In re Emergency Hosp. Sys. LLC,* No. 24-34683, 2024 WL 4997341, at *3 n. 21–22 (Bankr. S.D. Tex. 2024) (applying Texas law in determining authority to file Chapter 11 on behalf of Texas limited liability company); *accord In re Nica Holdings, Inc.,* 810 F.3d at 789–90 (applying state law in determining whether individual had authority to file chapter 7 on behalf of corporate debtor). With only one exception not applicable here, parties in support of ratification argue the TBOC expressly permits a Texas Limited Liability Company to ratify what may have been an unauthorized act by members under TBOC § 101.056.

These parties argue that other jurisdictions are of the same view. *See, e.g. In re Richardson Foods, Inc.,* 659 B.R. 154, 169–70 (Bankr. S.D.N.Y. 2014); (following *Hager* and applying Florida state law to find ratification was proper); *accord In re Sterling Mining Co.,* No. 09–20178, 2009 WL 2475302, at *6–8 (Bankr. D. Idaho 2009) (finding under Idaho law that an unauthorized act of filing bankruptcy may be ratified, relying on *Hager*); *In re Mojo Brands Media,* 2016 WL 1072508, at *1–2 & n. 3 (collecting cases from various jurisdictions). Although jurisdiction cannot be created by agreement or consent, it *can* be created by implied ratification. *Spurlin,* 664 F.3d at 960; *In re Reliable Air, Inc.*, No. 05-85627, 2007 WL 7136475, at *3 (Bankr. N.D. Ga. Mar. 9, 2007) (concluding that principal of corporation had ratified allegedly unauthorized bankruptcy

filing by failing to object for 11 months, while participating in, acquiescing to, and accepting the benefits of the bankruptcy, relying on ***Hager***).

Finally, parties arguing ratification supplies subject matter jurisdiction note that both express and implied ratification occurred in the case at bar. Express ratification occurred on October 16, 2024, when the lawful members of CWS formally (and unanimously) ratified the filing of the chapter 7.[77] Under the TBOC, this express ratification was valid and is of full force and effect. § 101.056. Therefore, this Court has jurisdiction and the motion to dismiss must be denied. The parties also claim implied ratification occurred. Since the inception of the chapter 7 fourteen months ago, Sprencel, Mendietta, and McGuffin have consistently participated in the bankruptcy as creditors and interest holders. They have attended numerous hearings in person. They have successfully sought and obtained relief from the Court. Not once have they objected to the bankruptcy on jurisdictional grounds. Nor has CES.

The Court recognizes there is authority outside the Fifth Circuit that supports a finding that ratification applies. Cases within this Circuit, however, that permit ratification are distinguishable as explained herein. Moreover, if ratification would apply here, parties favoring retention of jurisdiction do not explain why the decision to file bankruptcy is in the ordinary course of business such that it could be ratified under TBOC § 101.056. At best, Pollard may have had apparent authority, but under TBOC § 101.056 it could not be ratified by others. Finally, the Court finds that subject matter jurisdiction is determined on the date of filing and under the circumstances of this case, cannot apply ratification to permit a finding of subject matter jurisdiction.

---

[77] ECF No. 298, but this document was stricken at ECF No. 302.

IV.     **Can the Court Have Jurisdiction Over Adversary 24-05011 if the Bankruptcy Case is Dismissed?**

Because the Court finds that the Bankruptcy Case should be dismissed, there is a question of whether the Court should retain jurisdiction over related Adv. No. 24-05011. At the February 25, 2025, hearing, the Court cited the Fifth Circuit's decision in ***Querner***, and asked if the Court found that the CWS petition was unauthorized, could it still exercise subject matter jurisdiction over Adv. No. 24-05011?

In ***Querner v. Querner (In re Querner)***, the Fifth Circuit stated: "We hold . . . that as a general rule the dismissal or closing of a bankruptcy case should result in dismissal of related proceedings. The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding." 7 F.3d 1199, 1201 (5th Cir. 1993).  Further, the Fifth Circuit found that "[t]he decision to retain jurisdiction over related proceedings rests within the sound discretion of the bankruptcy court." ***Querner***, 7 F.3d at 1202. In evaluating a bankruptcy court's decision to retain jurisdiction over related claims, the appellate court must consider four factors: "economy, convenience, fairness, and comity." ***Id***.

Adversary No. 24-05011 has been on file for almost one year, but there has not been a scheduling order entered and no discovery has occurred.[78] In addition, there are several pending state court lawsuits with overlapping allegations of fraudulent transfers amongst the members of the Debtor that are further along and could possibly be decided more efficiently by Texas state

---

[78] A cursory review of the electronic docket in Adv. No. 24-05011 shows a docket littered with untimely answers, summons served that had expired, an inability to serve putative defendants properly, and default judgments that were entered and subsequently withdrawn. The Second Amended Complaint is the current operative Complaint, but the parties have advised the Court that a third amended complaint will need to be filed in response to a motion for more definite statement and pending motion for dismissal of Simmons Bank.

courts who had cases pending long before the filing of the Petition in this Bankruptcy Case. The economy, convenience, fairness, and comity factors weigh in favor of dismissal of Adv. No. 24-05011 to allow the members of Debtor to continue pursuing claims against one another, if they choose, in state court litigation that has been pending since 2020.

The facts of this case are distinguishable from ***Querner*** and are more persuasive in favor of dismissal of related proceedings. In ***Querner***, a bankruptcy estate was created when the case was filed, and only after the case was closed was the estate extinguished. There was not a question over whether the court had subject matter jurisdiction when the case filed, based on lack of authority—the question was whether there was jurisdiction over related proceedings after the bankruptcy case had been closed.

Here, without the filing of an authorized petition, subject matter jurisdiction was never established in the first instance to create the "case" (or the estate), rendering the Bankruptcy Case void *ab initio*. Without subject matter jurisdiction to establish the case, there is not a nexus between the Bankruptcy Case and related proceedings, and there cannot be "arising under" or "related to" jurisdiction over related proceedings, including Adv. No. 24-05011. *See **Wood***, 825 F.2d 90, 92–95. All related proceedings must therefore be dismissed.

Parties arguing in favor of the Court point to the time, effort, and money spent in Adv. No. 24-05011. They argue that given the magnitude of the alleged fraud and cost to the bankruptcy estate, the Court should retain jurisdiction. These parties emphasize that there is rampant bankruptcy fraud that has and will continue to persist. Those equitable factors do not support a finding of subject matter jurisdiction. Unlike ***Querner***, whether there was subject matter jurisdiction, none exists here.

### CONCLUSION

For the reasons stated in this Order, the Court **GRANTS** Simmons Bank Motion to Dismiss Bankruptcy Case for Lack of Subject Matter Jurisdiction (ECF No. 299). It is **ORDERED**, **ADJUDGED**, and **DECREED** that this bankruptcy case is **DISMISSED**.

It is further **ORDERED** that Adversary No. 24-05011-cag is **DISMISSED** for lack of subject matter jurisdiction. A separate Order will be entered in Adversary No. 24-05011-cag.

###